# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **IN RE:** | **Case No, 3:19-bk-07235** |
| | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC** | **Judge Walker** |
| Debtor. | **Adv. Proc. No. 3:23-ap-90036** |
| **BRIAN CUMMINGS** | |
| Plaintiff, | |
| v. | |
| **BRETTON KEEFER, on behalf of the deceased CHESTA SHOEMAKER, AFSOON HAGH, and JEANNE BURTON, Trustee on behalf of CUMMINGS MANOOKIAN, PLC,** | |
| Defendants. | |

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PENDING MEDIATION AND ARBITRATION ON BEHALF OF DEFENDANTS KEEFER AND HAGH

## I.     INTRODUCTION

This lawsuit is filed by an attorney, Brian Cummings, against his former client and former co-counsel in a state medical malpractice action. The former client is Bretton Keefer, the son of Chesta Shoemaker – a middle-aged woman who died after receiving negligent care at Vanderbilt University Medical Center ("Vanderbilt" or "VUMC"). The former co-counsel is Afsoon Hagh, the lawyer who represented Mr. Keefer throughout his

action against Vanderbilt, and who secured a settlement on his behalf (the "Malpractice Settlement").

Mr. Cummings withdrew from representing Mr. Keefer early in the discovery phase of the litigation when Mr. Keefer rebuffed Mr. Cummings' persistent pressure to settle the matter for pennies on the dollar, and Mr. Cummings was unwilling to continue contributing to the litigation of the matter. Over the next fourteen months, Ms. Hagh continued to prosecute the matter aggressively at her own expense, including hiring nationally-renowned trial attorney John Edwards to serve as her co-counsel. The case ultimately settled on the eve of trial as Ms. Hagh and Mr. Edwards were preparing to pick a jury in front of Davidson County Circuit Court Judge Joseph Binkley, Jr.

After learning of the settlement he did not assist in achieving, and despite having actively concealed significant instances of malpractice on his own part, Mr. Cummings initiated this lawsuit asking that a Court award him some unspecified portion of the Malpractice Settlement funds. Mr. Cummings did so despite three dispositive facts precluding (1) any Court as a forum or (2) any award in his favor.

First, Mr. Cummings expressly and unambiguously entered into a contract never to file litigation arising out of his representation of Mr. Keefer; the sole subject of the pending lawsuit. Second, Mr. Cummings drafted and insisted upon a clause in the same contract requiring that claims arising out his representation of Mr. Keefer be resolved exclusively through mediation and then binding arbitration. And third, Mr. Cummings drafted and agreed upon a provision that he would not receive a portion of any settlement if he withdrew from the Keefer representation; which he did after Mr. Keefer rebuffed Mr. Cummings' efforts to pressure him to settle the lawsuit for pennies on the dollar.

The former two points require dismissal of this lawsuit with prejudice; the latter point demonstrates the overall frivolous nature of the action. Because of Mr. Cummings' own contractual demands (memorialized in an attorney-client agreement that he personally drafted and executed), any dispute arising out of his representation of Mr. Keefer is specifically and unambiguously barred from adjudication in any Court – *at Mr. Cummings' specific insistence.*

This Court thus lacks subject-matter jurisdiction to hear Mr. Cummings' claims precisely because Mr. Cummings preemptively contracted that he could not and would not present any such claims to this Court in the form of two express clauses. The first, a covenant-not-to-sue, expressly states, "Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship." *Attorney-Client Agreement*, April 19, 2017, Brian Cummings to Brett Keefer, Page 3. **Exhibit 1**. Emphasis added.

The second clause, a binding mediation-arbitration provisions states, "any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration." **Exhibit 1**, at Page 3. Emphasis added.

Despite himself drafting and pressing these clauses onto Mr. Keefer, Cummings Manookian, and Afsoon Hagh covenanting never to sue over his representation in the malpractice suit; Mr. Cummings has now filed suit against Mr. Keefer, Cummings Manookian and Afsoon Hagh over his representation in the malpractice suit. His very act in bringing this lawsuit is actionable breach of contract. It also requires summary dismissal.

Where a plaintiff's claims are entirely subject to a valid, enforceable arbitration agreement, the court lacks subject matter jurisdiction over the case. The Court should dismiss Mr. Cummings' Complaint with prejudice because all of its claims are expressly covered by the broad covenant-not-to-sue and mediation-arbitration clauses that Mr. Cummings, himself, inserted into the contract governing his rights and remedies relative to his employment in the Malpractice Suit. In the alternative, Defendants Keefer and Hagh (hereinafter "Defendants") request that the Court stay the action and issue an order compelling mediation and arbitration.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     The April 2017 Engagement Agreement

On April 19, 2017, Brett Keefer retained the law firm of Cummings Manookian, Brian Cummings, and Brian Manookian to represent him as the surviving child of Chesta Shoemaker regarding her April 14, 2017 death at Vanderbilt University Medical Center. **Exhibit 1**, at Page 1. *See also, Amended Complaint*, D.E. 1-1, Page 19, Para. 11.



Cummings Manookian and its partners, including Brian Cummings, entered into a binding written agreement with Brett Keefer laying out the terms of Mr. Cummings' employment and engagement as an attorney in the matter (the "2017 CM Agreement"). *Amended Complaint*, D.E. 1-1, Page 19, Para. 11.

In addition to specifying the scope of the representation and how the attorneys would be compensated; the contract additionally detailed the exclusive manner in which any and all disputes under the contract must be resolved.

> **Mediation and Binding Arbitration of Any Attorney-Client Disputes**
>
> While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

Specifically, the parties agreed that "neither the client nor the attorneys in this attorney-client relation can file litigation over or about any alleged or real dispute within the Attorney-Client relationship." Rather, the parties agreed that "the forum for any such dispute must first by a good-faith mediation and then binding arbitration.

> If any of the terms stated in this letter are not consistent with your understanding of our agreement, please contact me before signing the agreement. Otherwise, please sign the agreement and return it to me via email (bcummings@cummingsmanookian.com), fax (615-266-0250), or mail.
>
> On behalf of the firm, we appreciate the opportunity to represent you in this matter. If you have questions, please feel free to email me or to call me.
>
> Sincerely,
>
> Brian Cummings
> CUMMINGS MANOOKIAN PLC

The agreement was executed by the Plaintiff who has now filed suit in this case, Brian Cummings. *Amended Complaint*, D.E. 1-1, Page 19, Para. 11. In March 2018, prior to any lawsuit being filed on behalf of Mr. Keefer, Brian Cummings left the law firm of Cummings Manookian. *Amended Complaint*, D.E. 1-1, Page 18, Para. 5.

**B.      The Updated August 2019 Engagement Agreement**

Consistent with the terms of the engagement agreement with Cummings Manookian, suit was filed on behalf of Mr. Keefer against Vanderbilt on February 11, 2019 alleging professional negligence resulting in the wrongful death of Chesta Shoemaker. *Amended Complaint*, D.E. 1-1, Page 18, Para. 8.

On August 23, 2019, following Mr. Cummings' departure from the Cummings Manookian firm, Brian Manookian sent Brett Keefer an "Updated Legal Representation and Engagement Agreement" for review and signature. The letter stated, in part:

> **Re: Updated Legal Representation and Engagement**
>
> Dear Brett:
>
> As you know, Brian Cummings and I no longer practice as partners in the same firm. As a result, Cummings Manookian, the law firm, no longer exists. I am providing you this updated Attorney-Client Agreement to simply memorialize that you are now represented by Manookian PLLC. The terms are otherwise identical to the prior agreement you signed.

The updated agreement contained the same terms and provisions prohibiting suit being filed over any aspect of the attorney-client engagement, and it once again identified mediation and binding arbitration as the sole vehicle for resolving any disputes that arose between the parties. **Exhibit 2**.

> **Mediation and Binding Arbitration of Any Attorney-Client Disputes**
>
> While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

The case continued to progress in Davidson County Circuit Court throughout 2018 and 2019 under the identical terms of the initial and updated engagement agreements, both of which included covenants-not-to-sue and binding mediation-arbitration clauses.

**C. Brian Cummings Acknowledges and Reiterates his Agreements to the Terms of the Initial and Updated Engagement Agreements.**

On January 3, 2020, Brian Cummings emailed Brett Keefer acknowledging his receipt, review, and acceptance of the Updated August 2019 Engagement Agreement whose terms were materially identical to the Initial 2017 Engagement Agreement other than to reflect that Brian Manookian and Brian Cummings were no longer operating as law partners. **Exhibit 3**, Email from Brian Cummings to Brett Keefer, January 3, 2020.

Indeed, Mr. Cummings simply asked Brett Keefer to confirm that Brian Cummings was still authorized to work on the case and that Brian Cummings would be reimbursed for any advanced expenses. Mr. Cummings went on to assure Mr. Keefer that agreeing to those two points would "only supplement the previous Attorney Client Agreements you signed in this case" and not "delete any aspects of any other such documents you signed." **Exhibit 3**.

> I need to confirm with you that you have always agreed to and authorized me to work as a lawyer on this case, and that you continue to do so. I also need to confirm with you that any litigation expenses I have or that I will advance on your behalf will be reimbursed. This 2019 agreement does not speak to those two particular issues, and even if we both expected those to things to be part of the past and ongoing work done by me on this case, I need to ask that you email me back something like "I agree."
>
> This request for a responsive email is only to supplement the previous Attorney-Client Agreements you signed in this case, and this affirmation is not meant to delete any aspect of any other such documents you signed. Also, nothing about this email exchange today increases or changes the total contingency fee rate of 33.33% that is in the prior documents.
>
> Brian

The only prior attorney-client agreements Mr. Keefer had signed were the 2017 Initial Agreement and 2019 Updated Agreement, both of which contain binding covenants-not-to-sue and binding mediation-arbitration clauses. Mr. Cummings email of January 3, 2020, expressly acknowledged and reaffirmed those terms.

**D.    Brian Cummings Seeks to Renegotiate the Terms of the Initial and Updated Engagement Agreements and then Withdraws in a Fit of Pique.**

On September 24, 2020, Brian Cummings wrote Brett Keefer asking him to sign a new engagement agreement "setting for the basis on which I will continue to represent you." *Correspondence from Brian Cummings to Brett Keefer*, September 24, 2020, **Exhibit 4**. The letter began by purporting to be a "follow-up" to Mr. Keefer's two prior engagement agreements as well as Mr. Cummings' email acknowledging their validity.

> This letter is a follow up on the following enclosed documents – (1) your original Attorney-Client Agreement with Cummings Manookian while I was there, (2) your additional Agreement with Afsoon Hagh and Brian Manookian following my departure from Cummings Manookian and the end of that firm and the beginning of their firms, and (3) our more recent email exchange documenting you have continued to want me to represent you in this matter.

The letter went on to ask Mr. Keefer to sign a new engagement agreement solely with Mr. Cummings that included identical terms to Mr. Keefer's prior engagement agreements. The only addition was a provision requiring the client to agree that "if you leave any kind of review for my law firm online, including a Google review, that it will be 5/5 starts and have only positive comments." **Exhibit 4**, at Page 3.

Notably, Mr. Cummings' proposed new agreement included the same covenant-not-to-sue and binding mediation-arbitration clause present in the operative engagement agreements.

> **Mediation and Binding Arbitration of Any Attorney-Client Disputes**
>
> While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential dispute or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do I) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorney in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

When Mr. Keefer declined to sign the new Engagement Agreement, Mr. Cummings promptly – and without notice – withdrew as counsel "effective immediately" leaving only Ms. Hagh to continue prosecuting the matter. *Correspondence from Brian Cummings,* October 2, 2020, **Exhibit 5**. As the basis for his withdrawal, Mr. Cummings cited Mr. Keefer declining to sign a new engagement agreement; Mr. Keefer's feeling that Mr. Cummings was pressuring him to settle the case; as well as Ms. Hagh's characterization of Mr. Cummings' fixation on Mr. Cummings' own financial outcome in the case as "only looking out for Brian Cummings." *Id.* at Page 3.

Following Mr. Cummings' withdrawal immediately prior to the beginning of expert discovery, Ms. Hagh continued to develop, fund, and prosecute the case on her own. She ultimately brought on former United States Senator John Edwards to act as co-trial counsel. As previously discussed, the case settled in late October 2021, following adjudication of pre-trial motions, and just days before jury selection was set to begin.

**E.    Brian Cummings Acknowledges All Issues Related to his Representation of Mr. Keefer must be Resolved Out-of-Court**

Soon after Mr. Cummings learned that the case was not proceeding to trial, he retained counsel who began writing Ms. Hagh "requesting that you inform me whether or not your client, wishes to proceed with the binding arbitration as provided for in the Attorney-Client Agreement." *Correspondence from James Price*, February 1, 2022, **Exhibit 6**. The letter from MR. Cummings' counsel, James Price, acknowledged that the parties entered into binding arbitration agreement covering Mr. Cummings' claims arising out of his work on the Shoemaker case. Indeed, in its less than one-page length, the letter references binding arbitration no less than eight (8) times.

Dear Afsoon:

I emailed you at afsoon@haghlaw.com on the 24th day of January, 2022, requesting that you inform me as to whether or not your client, Mr. Keefer, wishes to proceed with the binding arbitration as provided for in the Attorney-Client Agreement. It appears that the email at this address was rejected so I am re-sending my letter by U.S. Mail, fax, and email.

I am sure you agree that it is to everyone's benefit that this matter be resolved as quickly as possible. It would appear that the binding arbitration as provided for in the Attorney-Client Agreement is the most simple and quick way to resolve this issue and my client is prepared to proceed with that immediately. If you and your client agree with that, please let me know and I will be happy to provide a list of proposed arbitrators.

The letter closed by unilaterally requiring a response "no later than ten days from receipt… as to whether or not you represent Mr. Keefer and whether or not he wishes to proceed with binding arbitration." Despite no language existing in the Attorney-Client Agreement permitting such an outcome, Mr. Cummings threatened "unpleasant and lengthy litigation" if he did not receive a prompt response; concurrently announcing that a failure to respond would be treated as a waiver of arbitration.

Ms. Hagh responded by letter dated February 11, 2022. She began by recounting that "Brian Cummings previously served as counsel in *Keefer v. VUMC*. He quit early in

the matter after the client would not agree to settle the case for a fraction of its value, and because Mr. Cummings did not want to further contribute to the prosecution of the case." *Correspondence from Afsoon Hagh*, February 11, 2022, **Exhibit 7**.

Ms. Hagh pointed out to Mr. Price that [i]n such an event, the engagement agreement that your client drafted and signed is crystal clear that Mr. Cummings would only be entitled to reimbursement of his advanced costs and expenses. Your client has already been reimbursed his advanced costs and expenses. Although your letter references a 'fee dispute,' it fails to describe any such dispute. It then immediately proceeds to demand that Bretton Keefer choose arbitration or litigation as the means of adjudicating the 'dispute' that is never identified." *Id.* at Page 1. Ms. Hagh closed her response by requesting that Mr. Cummings' attorney "actually outline[] whatever it is your client is asking proceed to arbitration or litigation" so that she could meaningfully respond. Rather than do so, Mr. Cummings proceeded to file suit.

**F.      Brian Cummings Breaches the Terms of the Engagement Agreements by Filing this Suit**

On March 22, 2022, Brian Cummings filed an action in the Circuit Court for Davidson County Tennessee against Bretton Keefer and Jeanne Burton as Trustee for Cummings Manookian PLC. On March 29, 2022, Brian Cummings purported to Amend his complaint to add Afsoon Hagh as a Defendant.

On April 26, 2022, Jeanne Burton filed a Notice removing the lawsuit to the United States District Court for the Middle District of Tennessee, while simultaneously moving for the case to be remanded to Bankruptcy Court where Cummings Manookian is currently in bankruptcy. *Cummings v. Cummings Manookian*, Case No. 3:22-cv-00301, D.E. 1; D.E. 2.

For the next ten (10) months, Brian Cummings failed to serve either Brett Keefer or Afsoon Hagh with his Complaint or Summons, requesting serial extensions of time to do so. *See e.g.*, *Cummings v. Keefer*, Case No. 3:22-cv-00301, D.E. 20; D.E. 24; D.E. 31; D.E.42.

On February 27, 2023, Attorney John Spragens made an appearance on behalf of Brett Keefer and Afsoon Hagh solely for the purpose of entering an Agreed Order accepting service of process and setting a deadline of sixty days following service of the Complaint via email in which to file a responsive pleading. *Cummings v. Keefer*, Case No. 3:22-cv-00301, D.E. 53. To date, no Complaint has been served via email on Mr. Spragens following entry of the Court's Order permitting the same. Defendants file this Motion to Dismiss in response nonetheless.

## IV. LAW AND ARGUMENT

### A. Standard for Dismissal

This motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or in the alternative, Rule 12(b)(6) for failure to state a claim. Courts in the Sixth Circuit permit motions to dismiss pursuant to a covenant-not-to-sue or arbitration agreement to be brought as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *See, e.g., Winn v. Tenet Healthcare Corp.*, No. 2:10-cv-02140-JPM-cgc, 2011 WL 294407 (W.D. Tenn. Jan. 27, 2011); *Multiband Corp. v. Block*, No. 11-15006, 2012 WL 1843261, at *5 (E.D. Mich. May 21, 2012).

Rule 12(b)(1) motions to dismiss fall into two categories: facial attacks and factual attacks. *Gentek Bldg. Prods, v. Sherwin-Williams Co.*, 491 F.2d 320, 330 (6th Cir. 2007). Unlike a facial attack, a factual attack does not challenge the sufficiency of the pleading,

but the factual existence of subject matter jurisdiction. *Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "[N]o presumptive truthfulness applies to factual allegations and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citation omitted). In reviewing factual motions, "a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

With either challenge (facial or factual), the plaintiff bears the burden of proving that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996); *see also Rogers v. Stratton Indus., Inc.* 798 F.2d 913, 915 (6th Cir. 1986). Where, as in the instant case, a court lacks jurisdiction over a plaintiff's claims pursuant to Rule 12(b)(1), the complaint also fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Accordingly, "[w]hen all claims made in the litigation are subject to arbitration, the court may choose to dismiss the action in its entirety for failure to state a claim under Rule 12(b)(6)." *Rutter v. Darden Restaurants, Inc.*, No. CV 08-6106 AHM (SSx), 2008 WL 494043, at *9 (C.D. Cal. Nov. 18, 2008). **In fact, "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration**." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). (emphasis added).

## B.  The Federal Arbitration Act Provides for Enforcement of the Arbitration Agreement and Covenant-Not-to-Sue.

The Federal Arbitration Act ("FAA") applies to agreements "involving commerce." 9 U.S.C. § 2. The FAA provides in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The "term 'involving commerce' in the FAA [is] the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). For the FAA to apply, the transaction that the contract evidences need only affect interstate commerce. *Allied-Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 277 (1995).

The contract at issue here clearly "affects commerce." It is an engagement agreement between a law firm, its lawyers, and a client for the purpose of bringing suit against one of the largest hospitals and health care providers in the Southeast. Accordingly, each of the engagement agreements implicated "involved commerce" and the FAA is controlling.

In enacting the FAA, Congress intended to overcome general reluctance to enforce arbitration agreements. *Allied-Bruce Terminix Cos.*, 513 U.S. at 270. The FAA establishes the types of arbitration agreements that are enforceable and provides that "[a] written provision in any contract . . . involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Circuit City Stores*, 532 U.S. at 105 (finding that the use of agreements to resolve matters through mandatory arbitration is well-recognized, valid, and enforceable); *Rent-A-Ctr. West, Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010) (arbitration agreements must be enforced according to their terms). The FAA places arbitration on

equal footing with contracts and establishes a federal policy in favor of arbitration. *See, e.g., Green Tree Financial Corp. v. Randolph*, 531 U.S 79, 90 (2000); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Arbitration will generally be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techns., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Accordingly, any doubts regarding the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. Both the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit recognize this concept and have applied a liberal presumption in favor of arbitrability. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991); *Dawson v. Rent-A-Ctr., Inc.*, 490 F. App'x 727, 729 (6th Cir. 2012).

"When faced with a motion to compel arbitration, a district court must follow the procedure set forth in [S]ection 4 of the FAA . . . ." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003). "[I]f a litigant establishes the existence of a valid agreement to arbitrate, the district court must grant the litigant's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration." *Cronk v. TRG Customer Sols., Inc.*, No. 1:17-cv-00017, 2017 WL 5517259, at *3 (M.D. Tenn. Nov. 17, 2017) (citing *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005)).

**C.**     **Plaintiff Cummings, as well as Co-Defendant Cummings Manookian, entered into an Enforceable Arbitration Agreement and Covenant-Not-to-Sue with the Defendants.**

The parties' arbitration agreement is valid and enforceable. The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principal that arbitration is a matter of contract. 9 U.S.C. § 4. A federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement under the FAA. *See, e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under Tennessee law, a contract is formed when the parties have a meeting of the minds – an offer, an acceptance, and consideration. *See Doe v. HCA Health Servs. of Tenn., Inc.*, 26 S.W.3d 191, 196 (Tenn. 2001) (setting forth the requirements for contract formation under Tennessee law). Here, an explicit offer and acceptance occurred. Cummings literally drafted and then agreed to all of the terms within the engagement agreement, including the specific terms prohibiting the litigation of any claim in favor of a mediation and then binding arbitration.

There was also valid and ample consideration for both the covenant-not-to-sue and the arbitration agreement. Mr. Keefer was provided with representation by attorneys and the attorneys were provided with the payment in the form of a contingency fee in a significant wrongful death suit. In any event, a mere mutual agreement not to litigate is routinely considered sufficient consideration for purposes of an arbitration agreement. *See, e.g., Wilks v. Pep Boys,* 241 F. Supp. 2d 860, 863 (M.D. Tenn. 2003) (explaining that mutual promises to arbitrate claims constitutes adequate consideration); *Brown v. Heartland Emp't Servs.*, No. 19-11603, 2020 WL 2542009, *3 (E.D. Mich. May 19, 2020) (noting that "[t]he Sixth Circuit has found in numerous cases that mutual promises to arbitrate claims constitute bilateral consideration").

**D.     The Covenant-Not-to-Sue and the Arbitration Agreement Apply to the Claims Raised in this Case.**

Plaintiff's claims here fall squarely within the scope of the parties' covenant-not-to-sue and arbitration agreement and are expressly contemplated by the 2017 and 2019 engagement agreements.  While Mr. Keefer never accepted it, it is worth noting that the engagement agreement Mr. Cummings asked him to sign in 2020 included a verbatim provision.  There is simply no doubt that Mr. Cummings, throughout the entire course of his representation and relationship with the Defendants, agreed that he would never litigate the very claims he has brought in this case: disputes arising out of his representation of Brett Keefer.

The Supreme Court has held: "absent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of dispute subject to arbitration." *Equal Employment Opportunity Comm'n v. Waffle House*, 534 U.S. 279, 289 (2002). Moreover, in reviewing the scope of the arbitration agreement, the court must be guided by the principle that arbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of coverage. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–50 (1986); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

"In the Sixth Circuit, the test for determining whether a dispute falls within the scope of a broad arbitration clause is if 'an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement – along with the presumption in favor of arbitrability and the intent of the parties.'" *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 758 (E.D. Tenn. 2011) (quoting *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 814 (6th Cir. 2008)).

Here, Mr. Cummings' own Complaint does not and cannot exist without reference to the attorney-client relationship or engagement agreements at issue. Indeed, the covenant-not-to-sue and arbitration provisions expressly informed Mr. Cummings (its drafter) that they cover all claims and controversies arising out of the attorney-client relationship: "potential" or "real." It is hard to imagine more broadly applicable language in a contract between an attorney and client than the following:

> "Consequently, neither the client <u>nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship,</u> and the forum for any such dispute must first be a good-faith mediation and then binding arbitration." **Exhibit 1**. at Page 3. Emphasis added.

<u>**Mediation and Binding Arbitration of Any Attorney-Client Disputes**</u>

> While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

Put simply and alternatively, Mr. Keefer and Mr. Cummings did not have a relationship outside of their attorney-client relationship. Moreover, and notably, the clauses expressly cover any and all claims by "any attorneys" in the attorney-client

relationship "about... or within the attorney-client relationship." This broad, encompassing language applies to Defendants Hagh and Cummings Manookian as well. Accordingly, all of Mr. Cummings' claims fall within the scope of the covenant-not-to-sue and arbitration provisions he drafted and insisted upon.

## E. The Case Should Be Dismissed with Prejudice, or in the Alternative, the Court Should Stay the Action.

Because Mr. Cummings' claims are both barred by his own contract and arbitrable under the FAA, this Court should dismiss all of Plaintiff's claims with prejudice. Although the FAA provides for a stay of court proceedings "until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, courts routinely dismiss cases where all of the claims are subject to arbitration, <u>even in the absence of an express covenant-not-to-sue **as exists here**</u>. *See Arnold v. Arnold Corp. Printed Commc'ns for Bus.*, 920 F.2d 1269, 1275–76 (6th Cir. 1990) (holding that it was not "error for the district court to dismiss the complaint" after ordering arbitration); *Dean v. Draughons Jr. Coll., Inc.*, 917 F. Supp. 2d 751, 764 (M.D. Tenn. 2013); *Allen v. Tenet Healthcare Corp.*, 370 F. Supp. 2d 682 (M.D. Tenn. 2005) (wherein this court dismissed plaintiff's claims with prejudice where all claims were subject to binding arbitration). *See also Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (rejecting argument that the FAA requires district courts to stay suits pending arbitration rather than dismiss them).

The Sixth Circuit Court of Appeals has stated that "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Green v. Ameritech Corp.,* 200 F.3d 967, 973 (6th Cir. 2000); *SL Tennessee LLC v. Ochiai Georgia*, LLC, No. 3:11-cv-340, 2012 WL 381338, at *7–8 (E.D. Tenn. Feb. 6, 2012) ("[W]hen the court determines that all the claims in a cause of

action are to be submitted to arbitration, it may dismiss, rather than stay the action because staying the action will serve no purpose."); *see also Asbell v. Educ. Affiliates*, No. 3:12-cv-00579, 2013 WL 1775078, at \*18 (M.D. Tenn. Apr. 25, 2013) (dismissing case).

The necessity for a dismissal with prejudice is further underscored here, where Mr. Cummings – a sophisticated lawyer – drafted and inserted a clause in the very contract he now seeks to litigate which **expressly** states that, "neither the client <u>nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship</u>." Mr. Cummings apparent disregard for the sanctity of his own signed representations aside, he has simply contracted himself out of this courtroom.

## V. CONCLUSION

This Court does not have the lawful authority to adjudicate Plaintiffs' claims because the parties have contractually agreed that "neither the client nor the attorneys in this Attorney Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship" and designated mediation followed by arbitration instead as the exclusive manner of resolution for all disputes between the parties. The clauses expressly and unambiguously apply to all of the claims asserted by Mr. Cummings (which arise exclusively out of his attorney-client relationship) and all of the parties (whose roles and conduct were exclusively within the attorney-client relationship). **Exhibit 1**, at Page 3. Accordingly, the Court should dismiss this matter in its entirety with prejudice.

Date: May 4, 2023                    Respectfully submitted,


                                     */s/ John Spragens*
                                     John Spragens (TN Bar No. 31445)
                                     Spragens Law PLC
                                     311 22nd Ave. N.
                                     Nashville, TN 37203
                                     T: (615) 983-8900
                                     F: (615) 682-8533
                                     john@spragenslaw.com

                                     *Attorney for Brett Keefer and Afsoon*
                                     *Hagh for Purposes of Motion to Dismiss*


                        **<u>CERTIFICATE OF SERVICE</u>**

        The undersigned hereby certifies that the foregoing was filed May 4, 2023 and
served electronically upon all parties in interest or their counsel as indicated on the
receipt issued by the Court's electronic filing system.


                                     */s/ John Spragens*