UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF TENNESSEE (NASHVILLE)

|  |  |
|---|---|
| IN RE: | . Case No. 19-07235 |
|  | . Chapter 7 |
| CUMMINGS MANOOKIAN, PLLC, | . |
|  | . |
| Debtor. | . |
|  | . |
| . . . . . . . . . . . . . . . . . | . |
| BRIAN CUMMINGS, | . Adv. Case No. 23-90036 |
|  | . |
| Plaintiff, | . |
|  | . |
| v. | . |
|  | . 701 Broadway |
| BRETTON KEEFER, JEANNE BURTON, | . Nashville, Tennessee 37203 |
| and AFSOON HAGH, | . |
|  | . Wednesday, August 30, 2023 |
| Defendants. | . 11:38 a.m. |
| . . . . . . . . . . . . . . . . . | . |

TRANSCRIPT OF HEARING ON MOTION - AP MOTION FOR SCHEDULING
PRETRIAL CONFERENCE FILED ON THE BEHALF OF
DEFENDANT JEANNE BURTON [8]
BEFORE THE HONORABLE CHARLES M. WALKER
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | Counterpoint Legal PLC |
| | By: ELIZABETH S. TIPPING, ESQ. |
| | 2689 Union Hill Road |
| | Joelton, TN 37080 |
| | (615) 426-5566 |

APPEARANCES CONTINUED.

| | |
|---|---|
| Audio Operator: | Bailie Crawford, ECR |
| Transcription Company: | Access Transcripts, LLC |
| | 10110 Youngwood Lane |
| | Fishers, IN 46048 |
| | (855) 873-2223 |
| | www.accesstranscripts.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (Continued):


For Bretton Keefer and        Spragens Law PLC
Afsoon Hagh:                  By:  JOHN T. SPRAGENS, ESQ.
                              311 22nd Avenue North
                              Nashville, TN 37203
                              (615) 983-8900


For Jeanne Burton:            Thompson Burton PLLC
                              By:  PHILLIP G. YOUNG, JR., ESQ.
                              1801 West End Avenue
                              Suite 1550
                              Nashville, TN 37203
                              (615) 465-6008

1              (Proceedings commence at 11:38 a.m.)

2              THE CLERK:  Case 23-90036, Cummings v. Keefer.

3              THE COURT:  All right.  Let me go ahead and get

4    appearances.

5              MR. SPRAGENS:  Good morning, Your Honor.  John

6    Spragens on behalf of Ms. Hagh and Mr. Keefer.

7              MS. TIPPING:  Good morning, Your Honor.  Elizabeth

8    Tipping here on behalf of Brian Cummings who's here with me

9    today.

10             MR. YOUNG:  Your Honor, Phillip Young on behalf of

11   the trustee.

12             THE COURT:  Okay.  And we are here, Mr. Spragens, on

13   your motion to dismiss.

14             MR. SPRAGENS:  Yes, Your Honor.

15             MS. TIPPING:  Your Honor, may I address a procedural

16   issue before we start argument?  We -- it might significantly

17   cut this proceeding short.  We object to the defendant's

18   presenting or relying on any evidence outside of what's in the

19   complaint.  And without that evidence, they're not going to be

20   able to succeed on this motion.

21             The reason for our objection is that this Court

22   issued your order on May 25 setting this evidentiary hearing,

23   and in that order, the Court directed the exhibit list and

24   witness list be filed by August 16th.  The counsel for the

25   defendants has not filed a witness or exhibit list, and we

1  believe they should be precluded from presenting any evidence

2  that they did not identify ahead of time.

3           THE COURT:  Okay.

4           MR. SPRAGENS:  That's right, Your Honor.  We did not

5  file a witness or exhibit list because we intend to rely on the

6  papers, and I was just hoping to argue the motion without

7  presenting evidence today.  This is a Rule 12(b)(1)/12(b)(6)

8  motion, so -- and a reliance on extraneous evidence may not be

9  permissible anyway.

10          MS. TIPPING:  Your Honor, if they're relying on

11  outside evidence, there is no arbitration provision for us to

12  be discussing.  The documents that counsel attached to the

13  motion were not attached to the complaint and are not in the

14  record at this point.

15          THE COURT:  Okay.

16          MR. SPRAGENS:  Well, Your Honor, they were referred

17  to in the complaint, and the Court can take judicial notice of

18  a document that is integral to the complaint.  So I'm happy

19  to -- I don't have that citation in front of you, but I feel

20  very confident that that's good law in the Sixth Circuit.

21          THE COURT:  Okay.  Well, we're going to go ahead and

22  proceed with the motion.

23          Anything from the trustee as a --

24          MR. YOUNG:  No, Your Honor.

25          THE COURT:  Okay.

1        MR. SPRAGENS:  Thank you, Your Honor.  Also, as a

2    preliminary matter, I would note that the plaintiffs just

3    uploaded their exhibits within the last 25 minutes or so, so I

4    didn't receive the exhibits until I was sitting back there.  So

5    we would object to them using those exhibits, contravening the

6    local rules of this court which I've been learning so much

7    about over the last couple of years myself.

8        THE COURT:  Okay.  We'll get to that if they try to

9    use their exhibits that were just uploaded.

10       MR. SPRAGENS:  Okay.  Thank you, Your Honor.

11       We ask the Court to dismiss this adversary case, the

12   complaint, the amended complaint in this case for lack of

13   subject-matter jurisdiction and for failing to state a claim,

14   so Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

15   Procedure or, alternatively, to compel the parties to

16   arbitration and stay this proceeding.

17       The entirety of this whole dispute that's now in

18   front of this Court arises from an attorney-client contingent

19   fee agreement that was signed originally between Cummings

20   Manookian and Mr. Keefer and subsequently signed between

21   Mr. Cummings at his new firm and Mr. Keefer.  Mr. Cummings

22   drafted that agreement, at least in some form, he and

23   Mr. Keefer both signed that agreement, and then they assigned

24   an amended contract some years later.

25       This is a contract dispute, and the contract is

1  crystal clear, as we recited on Page 3 of the brief, with

2  respect to the contract that was referred to in the amended

3  complaint and that we would ask the Court to take judicial

4  notice of.  There is a binding arbitration clause.  It spells

5  out that "Any dispute between the parties to the contract"

6  cannot be resolved -- "that cannot be resolved between us must

7  first be taken to mediation for a good-faith attempt at

8  resolving the dispute, and if mediation does not completely

9  resolve the dispute, any ongoing disputed issues must be

10  submitted for final disposition by an agreed-to arbitrator for

11  binding arbitration."  And it also says, "Consequently, neither

12  the client nor the attorneys in this attorney-client

13  relationship can file litigation over or about any alleged or

14  real dispute within the attorney-client relationship."

15       Mr. Cummings drafted that language and had his client

16  sign that language, and now -- and have both of them sign it

17  again.  Cummings Manookian signed that language.  Hagh Law --

18  Ms. Hagh eventually signed that language as well.  And the

19  agreement is clear that any disputes relating to fees must be

20  mediated, and if mediation fails to resolve the dispute, it

21  must be taken into binding arbitration.

22       THE COURT:  Is that the exact term of that provision,

23  or does it just reference attorney-client relationship issues?

24       MR. SPRAGENS:  It says "any alleged or real dispute

25  within the attorney-client relationship."

1          THE COURT:  Okay.  And how would you define attorney-

2   client relationship?

3          MR. SPRAGENS:  Fees are typically -- fees and costs

4   are one of the first things that arises in a dispute between an

5   attorney and a client.

6          THE COURT:  Right.  Between an attorney and a client.

7   What about between attorney and attorney?  Would that be

8   covered under your idea of what attorney-client relationship

9   means?

10         MR. SPRAGENS:  Certainly -- so yes, under the

11  language that was drafted and signed here by all the attorneys

12  and the client in this proceeding.  It says, "Should any

13  dispute arise within this attorney-client relationship," and

14  then it goes on and says, "neither the client nor the attorneys

15  in this attorney-client relationship can file litigation over

16  or about any alleged or real dispute within the attorney-client

17  relationship."

18         This attorney-client relationship is governed by

19  contract.  The contract includes contingency fee award,

20  recovery of costs.  It includes a provision about what happens

21  when an attorney withdraws.  It includes a provision about what

22  happens when a client discharges the attorney.  So the entire

23  nature of the attorney-client relationship is spelled out in

24  that contingent fee agreement.

25         So yes, my view is that all of the issues that

1  Mr. Cummings is seeking to litigate are -- they're really a

2  contract dispute between him and his client.  He contends that

3  his client should have paid him a portion of the fee in the

4  case that was resolved.  And his client, obviously, doesn't

5  feel the same way.  So he has a dispute with his client about

6  Mr. Cummings' entitlement to attorneys' fees.

7         His client's position is that he withdrew from the

8  representation, so I don't owe you a fee.  You're entitled to

9  recover your costs.  It's all pursuant to the terms of the

10 contract.  Mr. Cummings' position is that he was forced to

11 withdraw from the representation and, therefore, is still

12 entitled to some portion of the fee.

13        Fundamentally, this is a dispute about a contract

14 between an attorney and a client and the client making the

15 choice to pay one attorney and not the other.  I think that --

16        THE COURT:  And I don't have this document, correct?

17        MR. SPRAGENS:  It is an exhibit to our motion.  And

18 under that, because, you know, it's filed, I believe you can

19 take judicial notice of it.

20        THE COURT:  But you did not upload your witness and

21 exhibit list per the Court's order and instruction.

22        MR. SPRAGENS:  I'm sorry, Your Honor.  I didn't

23 understand that we were required to reupload exhibits that were

24 filed in support of the motion.  I thought it was if we were

25 putting on evidence in this courtroom, that we would need to

1   have a sponsoring witness to authenticate that evidence.

2          So in my view, it's routine; you know, courts decide

3   motions to dismiss without hearings all the time.  There's no

4   reason that the Court can't take judicial notice of a contract

5   that was referenced in the complaint and supplied in the motion

6   to dismiss.

7          THE COURT:  Right.  I can take judicial notice of the

8   contract, but that has nothing to do with authenticating or

9   relying on anything within the contract.  There is a contract.

10  So firstly --

11         MR. SPRAGENS:  Thank you, Your Honor.  Mr. Cummings

12  is now trying to get around the language in the contract by

13  creating this into -- creating this dispute between attorneys

14  and maybe alleging some sort of common law.  It's very hard to

15  tell from the amended complaint what the causes of action are

16  here.  There's a reference to the attorney-client agreement,

17  and then there's a reference to unjust enrichment.  There's no

18  separately delineated cause of action pled in the complaint.

19         But of course, where there's a contract governing a

20  relationship, there are no, you know, common law causes of

21  action that can displace the terms of the contract.  This is a

22  contract dispute.  And the money that's at stake here was

23  Mr. Keefer's property.  And Mr. Cummings is asserting an

24  entitlement to some of Mr. Keefer's property.  His entitlement

25  is completely and totally derived from the contract with

1  Mr. Keefer.

2           Every attorney who is presently involved in this

3  agreed to arbitrate any dispute arising from that contract, and

4  there's a strong federal policy in favor of arbitration, which

5  we cite extensively in our brief.  Arbitration agreements

6  should be construed and given full force and effect.  There was

7  an arbitration agreement here.  It was drafted by the attorney

8  who later brought the case.

9           And so now, Mr. Cummings cannot invent federal

10  subject-matter jurisdiction for this Court by converting a

11  contract dispute into some amorphous freestanding attorney's

12  lien dispute.  There's a contract; he has a dispute with his

13  client about how much money his client owed him as a result of

14  the attorney-client relationship, and that should be dealt with

15  in arbitration pursuant to the terms of the contract.

16           If the Court doesn't have any more questions, I'll

17  let the other side go.

18           THE COURT:  Okay.  Thank you.

19           MR. SPRAGENS:  Thank you, Your Honor.

20           MS. TIPPING:  Good morning, Your Honor.  Elizabeth

21  Tipping here on behalf of Brian Cummings.

22           Before I dive right in, I would like to address two

23  things that were shared by counsel in argument.  The first is

24  the representation that not just Mr. Cummings and Mr. Keefer

25  signed an arbitration agreement, but that such an agreement was

1　signed by all of the attorneys who are involved.  I flipped

2　through to make sure I was correct.  None of the documents that

3　were attached to defendant's motion -- even if the Court were

4　to look at them with that authentication, none of them include

5　signatures by Ms. Hagh -- Defendant Hagh, which is the second

6　issue that we've raised as reason to deny this motion.

7　　　　　　The other matter that was raised right near the end

8　of argument was the suggestion or the assertion that

9　Mr. Cummings cannot invent federal subject-matter jurisdiction.

10　And that ties well into the first point in our motion, which is

11　that the federal subject-matter jurisdiction in this case came

12　because this matter involves a bankruptcy, and the bankruptcy

13　trustee is the party who actually removed this case from state

14　court to federal court so that it could ultimately come to this

15　Court.

16　　　　　　And so we have opposed the motion to dismiss for

17　three reasons.  The first is that the Court has -- this Court

18　has exclusive jurisdiction over this matter and that that

19　jurisdiction trumps any arbitration provision that might apply.

20　　　　　　The second is that Ms. Hagh has no agreement to

21　arbitrate with Mr. Cummings and, therefore, cannot force

22　Mr. Cummings to arbitrate with her.

23　　　　　　And then finally, we've discussed the fact that both

24　Defendants Hagh and Defendant Keefer have waived arbitration by

25　sitting on their rights for over 15 months.  They've known

1 | about this claim and this case since early 2022, and the first

2 | time that arbitration was demanded was shortly before the

3 | filing of this motion in May.

4 | We're prepared to --

5 | THE COURT: When you say they sat on their rights,

6 | they didn't have the dispute. So from that 15 months, tell me

7 | that timeline.

8 | MS. TIPPING: So I'd be glad to, and we are prepared

9 | to present evidence on these points, but I'll discuss it

10 | through, and if the Court would like, we'll bring in the

11 | exhibits and the witnesses to support it.

12 | Mr. Cummings filed his notice of attorney's lien back

13 | in 2020. And after the settlement of the underlying case was

14 | approved, he asked for a motion for status conference in

15 | December of 2021. So at that point, Defendants Hagh and

16 | Defendant Keefer knew that this claim had been made or was

17 | being made by Mr. Cummings. There was some briefing in the

18 | trial court over the course of about a month in which Defendant

19 | Hagh demanded that the case had to be filed in a separate

20 | action. There was discussion at one point about arbitration,

21 | and so from February 1st until March the 8th of 2022, counsel

22 | for Mr. Cummings at that time, James Price, sought through

23 | written correspondence, which are all attached to our motion

24 | and we're prepared to present today, asked Defendant Hagh to

25 | advise about Defendant Keefer's views on arbitration,

specifically whether this matter ought to be addressed in
arbitration or whether Mr. Keefer did not want to do that
because of all that arbitration entails.

In each of the responses that Defendant Hagh sent
back, she claimed she had no idea -- she couldn't understand
what was being asked, but she refused to answer any questions
about arbitration. We would suggest to the Court that at least
through that correspondence, there was an awareness that there
was going to be a lawsuit filed, that there was a request about
arbitration, and that the defendants specifically and expressly
refused to address arbitration.

That lawsuit was then filed in March of 2022. We've
outlined the issues that arose related to service, up to and
including the deputy U.S. marshal attempting to serve Defendant
Hagh and being interfered with by Mr. Manookian, who's not a
party in this case.

And finally, we resolved all of those after we filed
a motion for entry of default in February.

So if I go -- and the Court -- we discussed in our
brief, there are some Sixth Circuit rulings regarding waiver.
And one of those, I think, is illustrative or helpful in this
case, and that's the case of O.J. Distributing. The court
found in that case -- the Sixth Circuit found that the engaging
in settlement negotiation period which happened for over a year
before the lawsuit was filed, the court included that back-and-

1   forth settlement discussion in their counting of the 15-month

2   delay.  There was discussion; there was back-and-forth filing.

3   When that was clearly not going to happen, the plaintiff filed

4   the lawsuit, similarly had trouble with service.  And then

5   three months after the lawsuit was filed, the defendant made

6   its first request for arbitration.

7          In that case, the lawsuit was only pending for three

8   months before the defendant sent the letter requesting

9   arbitration.  The Sixth Circuit said that entire period of time

10  where the defendant knew that the plaintiff had a claim and did

11  not ask for arbitration should be counted, and because the

12  defendants did not ask for arbitration throughout that time,

13  they had sat on -- I think the phrase they used was "they had

14  slept on their rights" for 15 months and, therefore, had waived

15  arbitration.

16         If I could go back -- unless Your Honor had a

17  question about that waiver, I wanted to --

18         THE COURT:  No questions.

19         MS. TIPPING:  -- I wanted to address the exclusive

20  jurisdiction piece briefly, although my knowledge of bankruptcy

21  court is this much, and I know Your Honor has much more.  But

22  we haven't heard anything about bankruptcy and how the

23  interplay of the arbitration provision and the Bankruptcy Code

24  should be addressed in this particular case.  And I think that

25  it's important for the Court to look at that.  I think there

1   are a lot of cases out there that talk about what to do when a

2   party wants to compel arbitration indicates that it is in the

3   bankruptcy court.

4            And the courts have instructed bankruptcy courts to

5   determine whether there's an inherent conflict between

6   enforcement of the arbitration provision and the underlying

7   purposes of the Bankruptcy Code.  They look at the

8   particularized inquiry into the nature of the claim and the

9   facts of the specific bankruptcy when they are making that

10  determination.  And courts are instructed to consider the

11  objectives of the Bankruptcy Code, such as the goal of

12  centralized resolution of claims and protecting parties from

13  piecemeal litigation.

14           And where there is an inherent conflict, the

15  Bankruptcy Code trumps the Federal Arbitration Act.  That can

16  exist, and we cited the Court to the Fourth Circuit Court of

17  Appeals ruling that found that there can be an inherent

18  conflict, even when the motion to compel is not seeking to

19  compel a debtor or a trustee to arbitration but another party

20  related because of the impact on the bankruptcy.

21           And so here, we have the trustee, Mr. Cummings, and

22  Defendant Hagh all asking for a piece of the same pot of money,

23  which is the attorneys' fee from the case involving Defendant

24  Keefer.  And if one piece of that -- whether it be Mr. Cummings

25  claim just against Mr. Keefer because there's an arbitration

1  provision with Ms. Hagh, or all of Mr. Cummings' claim -- if

2  that has to go to arbitration, we're going to have two forums

3  dividing up the same pot of money but among different sets of

4  parties, and there's no way that that can happen without there

5  being inconsistent rulings.

6         So this is exactly the type of case that presents

7  that conflict that results in the Bankruptcy Code trumping the

8  Arbitration Act, so.

9         THE COURT:  So if there wasn't that conflict -- and

10 as you may be aware, there's another adversary that is on

11 appeal that is integral to resolving this case -- if that is

12 resolved and it remains with the Court, which is still yet to

13 be determined whether it does, is there conflict still present

14 if both matters are before the Court or if -- depending on what

15 happens on appeal, it may not be in the same forum or at least

16 in front of the same judge or maybe even the same district.

17 How does that affect your position?

18        MS. TIPPING:  I think that what has been raised by

19 the trustee is that because there are related issues, at least

20 with respect to this particular asset, there has been mention

21 to how do we make those two -- these two adversary proceedings

22 work together so that -- because of those commonalities and

23 whether --

24        THE COURT:  Is it your position one is before the

25 other, I guess is the easiest way to ask the question.  Do you

1  have to resolve one in order to get to the other?

2          MS. TIPPING:  I don't --

3          THE COURT:  Or are they simultaneous?

4          MS. TIPPING:  I think they could be simultaneous.  I

5  don't think that one has to be resolved before the other.  I

6  think that if -- I suppose if the trustee has no right to that

7  fee, then that would resolve the conflict, so if the decision

8  is made in the other adversary proceeding --

9          THE COURT:  That very well could happen.

10          MS. TIPPING:  Correct.  And if that did, I suppose

11  that would resolve that conflict.  But short of that, I think

12  it could be handled together or closely in time.

13          THE COURT:  Okay.  I interrupted you, so --

14          MS. TIPPING:  I apologize.

15          THE COURT:  -- please keep going.

16          MS. TIPPING:  We are prepared, as I said, to put on

17  the evidence supporting the waiver and addressing the matter

18  concerning Ms. Hagh, although as I've noted, there's no

19  agreement, authenticated or otherwise, with Ms. Hagh's

20  participation or signature or otherwise before the Court.  But

21  if Your Honor would like to hear evidence on the two -- second

22  and third issues, the waiver and the lack of arbitration

23  provision, we can put on evidence, or I'm happy to move on at

24  this point.

25          THE COURT:  Okay.  Anything from the trustee before

1  we -- since the trustee started this by bringing it from state

2  court to district court, and then it meanders its way here to

3  bankruptcy court.

4      MR. YOUNG:  Guilty as charged, Your Honor.  Phillip

5  Young on behalf of the trustee, and I really just wanted to

6  address one issue that the Court raised briefly:  that is,

7  there is jurisdiction here because there is a bankruptcy estate

8  involved.  There's a pot of money to which three parties claim

9  entitlement:  Ms. Hagh claims entitlement, Mr. Cummings claims

10  entitlement, and the bankruptcy estate claims entitlement.

11      I do believe that if those proceeded in different

12  forums you could end up with very conflicting results.  For

13  example, what if this Court said the estate was entitled to 100

14  percent?  Then what is the other court deciding, for example?

15  That's an extreme example, but illustrative, nonetheless.

16      To the Court's question about how the interplay

17  between this and the other adversary proceedings, that's really

18  what I wanted to speak to.  We removed this to this Court

19  because we think they're closely related.  In the other

20  adversary proceeding, the trustee included, in the list of

21  cases to which she's entitled to the accounts receivable, this

22  case.  This fee is listed in that other adversary proceeding.

23  We think these two need to proceed side by side for judicial

24  efficiencies.

25      Now obviously, there are other issues as between

1   these two clients that maybe the trustee is not directly

2   involved in, but the ultimate determination needs to be

3   decided, in our view, with the other adversary proceeding,

4   wherever that is, whenever that is.

5         And so that's the trustee's position because we think

6   this is actually integral to that other matter and highly

7   related to that other matter.

8         THE COURT: Okay.

9         MR. YOUNG: That's all I've got, unless the Court has

10   questions for me.

11         THE COURT: Nope, thank you.

12         MR. YOUNG: Thank you.

13         MR. SPRAGENS: Just to respond to a couple of points,

14   Your Honor. With respect to whether bankruptcy jurisdiction

15   should trump the Federal Arbitration Act in this particular

16   instance, that Fourth Circuit that Ms. Tipping pointed the

17   Court to, the basis for finding that bankruptcy jurisdiction

18   should trump the FAA is that it would substantially interfere

19   with the reorganization of the debtor.

20         Here, I don't think there is that risk, and frankly,

21   I think efficiency, counsel's in favor of going to arbitration

22   as required by the contract and letting the arbitrator, the

23   binding arbitration decide who's entitled to what.

24         If there's some dispute about moving the money around

25   at that point, then obviously, the trustee has plenty of tools

1 at her disposal to get relief from this Court. But the

2 arbitrator is the one who's entrusted with this decision, and

3 there's no reason that the arbitrator couldn't make that

4 decision instead of bringing this into the bankruptcy and

5 turning it into a parallel or sequential or something adversary

6 proceeding. So my view is efficiency favors arbitration.

7 The only other point I really wanted to address, Your

8 Honor, is Ms. Tipping's argument that Ms. Hagh somehow sat on

9 her rights and has waived her right to arbitration. To the

10 extent the Court considers the exhibits that were filed along

11 with the motion and the exhibits that were filed with the

12 response, there's a long history of Mr. Price contacting

13 Ms. Hagh to ask about whether arbitration -- whether she would

14 be invoking arbitration, and her response was always: what

15 claims are you talking about; what claims are you bring; what

16 is the nature of this. Because number one, she needed to

17 evaluate and advise Mr. Keefer about whether there was going to

18 be an arbitration about this contract, and number two, she

19 needed to determine if she had a conflict with her client

20 because, obviously, the further this goes, the more possibility

21 there becomes of a conflict between the client and the

22 attorney. So she responded to those emails and asked for more

23 information about the claims, and that information wasn't

24 forthcoming.

25 With respect to saying that this was a separate

1  dispute that needed to be brought separately, Ms. Hagh did say

2  that in the context of the medical malpractice case and an

3  attempt to enforce an attorney's lien in the medical

4  malpractice case, she said in front of Judge Joe Binkley, no,

5  this is not for this Court to decide; this would have to be a

6  separate proceeding.  And of course, that proceeding is a

7  mediation and, if unsuccessful, an arbitration.  So in our

8  view, she certainly didn't sit on her rights there.

9       I think that's all I have in response to their

10  points, Your Honor.

11       THE COURT:  Okay.  No, thank you.  Yeah.

12       MR. SPRAGENS:  Thank you.

13       THE COURT:  All right.  If you're ready, proceed with

14  your evidence.

15       MS. TIPPING:  Okay.  Thank you, Your Honor.

16       MR. SPRAGENS:  Would you like me to wait until an

17  exhibit is used to make an objection to the use of the

18  exhibits?  Or should we -- I mean, it's all the exhibits.

19       THE COURT:  So here's what I just noticed, right?  So

20  you're relying on documents that were filed in your motion, and

21  you have not uploaded a witness and exhibit list.  Counsel's

22  relying on documents that were just uploaded.

23       The Court will entertain the evidence as presented.

24  If you have a substantive objection to that evidence, raise it.

25  You can go ahead and lodge your overall objection, if you have

1    one, right now.

2          But it seems as if the Court is going to consider --

3    the Court will make a determination as we go as to, obviously,

4    the substance of the exhibits, but given the fact that the

5    exhibits were uploaded, unless there's a substantive objection,

6    the Court will likely consider.  But I'll leave that to you on

7    if you want to lodge your objection now or as we go.

8          MR. SPRAGENS:  Sure, Your Honor.  I'll just object to

9    using any exhibits that were just uploaded at about 11 o'clock

10   today.

11         THE COURT:  Okay.

12         MS. TIPPING:  Your Honor, in light of the fact that

13   there's no arbitration contract before the Court and there's

14   certainly nothing related to Defendant Hagh requiring

15   arbitration with Defendant Hagh [sic], we are going to rest on

16   the arguments that have been made at this point and ask the

17   Court to rule based on the evidence that's before you.

18         THE COURT:  Okay.

19         MR. SPRAGENS:  Thank you, Your Honor.  We're relying

20   on our papers and the exhibits thereto.

21         THE COURT:  All right.  The Court will take a five-

22   minute recess.  Or it may not be five minutes; the Court will

23   take a recess.  How about that?

24         THE CLERK:  All rise.

25      (Recess taken at 12:08 p.m.)

1    (Proceedings resumed at 12:59 p.m.)

2         THE CLERK:  All rise.

3         THE COURT:  Take your seats.  All right.  Thank you,

4    Counsel, for your argument.  Court's ready to rule, and I'll be

5    reading an oral ruling at this time on the motion to dismiss.

6         This matter is before the Court on the motion to

7    dismiss brought by Defendants Bretton Keefer and Afsoon Hagh.

8    Counsel for the movants represented that he would rely on his

9    motion and argument and presented no evidentiary support for

10   his position that this case should be dismissed for lack of

11   subject-matter jurisdiction and lack of personal jurisdiction,

12   as well as the alternative request seeking arbitration.

13        He failed to file a witness and exhibit list and,

14   instead, sought the Court's judicial notice of documents

15   attached to his motion and to the amended complaint.

16        Court declines judicial notice of documents that have

17   not been authenticated through the evidentiary process.

18        Movants argue that this Court lacks jurisdiction

19   based on an arbitration clause in an agreement between

20   Defendant Keefer and the plaintiff.  As there is no such

21   agreement between plaintiff and Defendant Hagh, the argument on

22   her behalf is particularly lacking.

23        The very purpose of bankruptcy is to modify the

24   rights of debtors and creditors, and Congress intended to

25   centralize disputes about a debtor's assets and legal

1    obligations in the bankruptcy courts, and arbitration is

2    inconsistent with centralization of these decisions because

3    permitting an arbitrator to decide a core or noncore issue

4    would make debtor-creditor rights contingent upon an

5    arbitrator's ruling, rather than the ruling of the bankruptcy

6    judge assigned to hear the debtor's case.  And I am citing

7    <u>Phillips v. Congleton</u>, 403 F.3d 164 (4th Cir. 2005).

8            Bankruptcy courts consider the following factors in

9    determining whether to compel or deny an arbitration request:

10           First, whether the arbitration proceeding was

11   commenced prepetition.  It was not in this instance.

12           Whether the party seeking arbitration has formally

13   appeared in the bankruptcy case.

14           Three, whether the arbitrator has special knowledge

15   or expertise which would be helpful to the resolution of

16   disputed issues.  No arbitrator is appointed because no

17   arbitration has been commenced.

18           Number four, whether there is a strong likelihood

19   that the debtor will confirm a plan, which is inapplicable.

20           Number five, there is an international arbitration

21   agreement provision; there is not.

22           But of particular significance here are factors six

23   and seven:  six, the likelihood of piecemeal litigation.

24   Significant likelihood exists.

25           And seven, what impact resolution of the issue will

1  have on the bankruptcy estate:  potentially very significant in

2  this instance.  And that list comes from B.J. Wade and also In

3  re Nukote from right here in the Middle District of Tennessee.

4          So factors six and seven carry the day and outweigh

5  all other issues.

6          Moreover, on March 13, 2023, the District Court from

7  the Middle District of Tennessee referred this case to the

8  bankruptcy court on the unopposed motion of the Chapter 7

9  trustee.  The plaintiff's claims are directly related to the

10  administration of the main bankruptcy case, as well as the

11  trustee's claim in her related adversary proceeding.

12          Moreover, Section 105 of the Bankruptcy Code

13  authorizes the Court to issue any order, process, or judgment

14  that is necessary or appropriate to carry out the provisions of

15  this title.

16          The Court determines that it is fundamentally

17  accepted that request for arbitration be denied when the

18  arbitration would frustrate the purpose of the Bankruptcy Code

19  and this Court's ability to retain jurisdiction over the

20  bankruptcy process.

21          For those reasons, the motion to dismiss is denied.

22          If I could get an order to that effect, incorporating

23  the findings and reasoning that I've just announced orally?

24          MS. TIPPING:  Yes, Your Honor.

25          THE COURT:  All right.  Any other questions from

1 counsel?

2           MR. SPRAGENS:  No, Your Honor.

3           THE COURT:  All right.  The one thing the Court will

4 do, since there is a collateral case, we're going to set this

5 out to January of '24, effectively, for an updated status, and

6 hopefully by that time, the case will be returned from the --

7 the other case will come back from the district court, or we'll

8 know that that piece is no longer before this Court.  So we'll

9 have some certainty, hopefully.  So plan on January of '24

10 being the next time you'll be here in front of me before -- on

11 this matter.

12           MS. TIPPING:  Thank you, Your Honor.

13           THE COURT:  All right?

14           MR. SPRAGENS:  Thank you, Your Honor.

15           THE COURT:  Thank you.  Court will be adjourned.

16           THE CLERK:  All rise.

17      (Proceedings concluded at 1:06 p.m.)

18                         *  *  *  *  *

19

20

21

22

23

24

25

# **C E R T I F I C A T I O N**

1

2

3        I, Lisa Luciano, court-approved transcriber, hereby

4  certify that the foregoing is a correct transcript from the

5  official electronic sound recording of the proceedings in the

6  above-entitled matter, to the best of my ability.

7

8

9  _____

10  LISA LUCIANO, AAERT NO. 327    DATE: October 13, 2023

11  ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ACCESS TRANSCRIPTS, LLC                    1-855-USE-ACCESS (873-2223)