# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| IN RE:<br><br>CUMMINGS MANOOKIAN, PLLC<br><br>    Debtor.<br><br>BRIAN CUMMINGS,<br><br>    Plaintiff,<br><br>v.<br><br>BRETTON KEEFER, JEANNE BURTON, and AFSOON HAGH<br><br>    Defendants. | Case No. 3:19-bk-07235<br>Chapter 7<br>Judge Walker<br><br>Adv. Proc. No. 3:23-ap-90036 |

## DEFENDANT AFSOON HAGH'S
## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This adversary proceeding represents a legally baseless attempt by a former attorney, Plaintiff Brian Cummings, to recover attorney's fees from a case he voluntarily abandoned years prior to its settlement. The Plaintiff has sued the wrong party, under a contract that bars his recovery, supported by a record completely devoid of evidence. The Plaintiff's claims against Defendant Afsoon Hagh fail at every level of legal scrutiny—procedural, statutory, and contractual.

The material facts are stark, documented, and undisputed. Brian Cummings drafted an engagement letter for the underlying *Shoemaker* matter that drew a sharp, dispositive distinction between being "discharged" by a client (which preserved a right to a quantum meruit fee) and "withdrawing" from representation (which limited recovery to advanced expenses only). In October 2020, citing personal friction with co-counsel and the client, Mr. Cummings voluntarily withdrew. He was not fired. He simply quit. Under the plain language of the contract he wrote, his right to a fee was extinguished the moment he walked away.

Furthermore, Mr. Cummings has misdirected his claims against Afsoon Hagh in her individual capacity. Yet, Ms. Hagh was not his client, nor was she a party to his engagement agreement. She practiced law through Hagh Law PLLC, a separate legal entity formed under Tennessee law. Under Tennessee's Revised Limited Liability Company Act, Ms. Hagh is personally shielded from the liabilities of her firm. Mr. Cummings has ignored this fundamental corporate distinction, just as he has ignored his obligation to prosecute this case. He has conducted zero discovery—no depositions, no interrogatories, no requests for production. He now faces summary judgment with a record completely devoid of evidence to support his claims against Ms. Hagh.

This Memorandum details why the Court must grant summary judgment: (1) Ms. Hagh is shielded from personal liability by statute; (2) Mr. Cummings contractually forfeited his fee by voluntarily withdrawing; (3) the existence of an express contract bars any unjust enrichment claim; and (4) the Plaintiff has failed

to marshal any evidence to support the essential elements of his case under the *Celotex* standard.

## II. STATEMENT OF FACTS

The following facts are drawn from the pleadings, the attached exhibits, and the record of proceedings. They are undisputed.

### A. The Corporate Structure and Parties

Afsoon Hagh is an attorney licensed to practice in Tennessee and is a member of Hagh Law PLLC. She is sued here in her individual capacity. Hagh Law PLLC is a professional limited liability company organized under the laws of Tennessee. It is a separate legal entity distinct from its members.

Brian Cummings ("Plaintiff") is an attorney and former partner of Cummings Manookian, PLC.

The legal services at issue were performed in the case *Bretton Keefer, on behalf of the deceased Chesta Shoemaker v. Vanderbilt University Medical Center*, Docket No. 19C358, in the Circuit Court for Davidson County, Tennessee (the "*Shoemaker* Matter").

### B. The Cummings Manookian Engagement Agreement (2017)

In April 2017, Mr. Cummings, on behalf of his then-firm Cummings Manookian, entered into an Attorney-Client Agreement ("2017 Agreement") with the client, Bretton Keefer. The 2017 Agreement was drafted by Mr. Cummings.

Case 3:23-ap-90036 Doc 57 Filed 01/23/26 Entered 01/23/26 23:48:03 Desc Main Document Page 3 of 17

The 2017 Agreement contained specific provisions regarding the termination of the attorney-client relationship. Specifically, it stated:

**Discharge:** "You have the right to change attorneys... If you terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed...".

**Withdrawal:** "We may choose to withdraw from representing you... A 'withdrawal' by this firm does not relieve you of the responsibility to pay advanced costs.".

Crucially, the "Withdrawal" provision **did not** reserve a right to an attorney's fee, unlike the "Discharge" provision.

## C. Mr. Cummings' Voluntary Withdrawal

On October 2, 2020, Brian Cummings sent a letter ("Withdrawal Letter") to Bretton Keefer and Afsoon Hagh stating, "I am writing to communicate that, effective today, I am withdrawing as co-counsel in this matter". In the Withdrawal Letter, Mr. Cummings cited "strained" relationships and "personal conflict" as the reasons for his withdrawal.

He stated, "I believe I am ethically required to withdraw... based on your very recent comments" regarding a fee dispute and a request that the client sign a new retainer agreement limiting negative online reviews. Mr. Cummings was not discharged by the client; he initiated the termination of the representation.

Case 3:23-ap-90036   Doc 57   Filed 01/23/26   Entered 01/23/26 23:48:03   Desc Main
Document     Page 4 of 17

Following his withdrawal, Mr. Cummings filed a "Notice of Attorney's Lien" on November 27, 2020.

**D. The Hagh Law Engagement Agreement (2021)**

On April 26, 2021, a new engagement agreement ("2021 Agreement") was executed between **Hagh Law** (represented by Afsoon Hagh) and **Edwards Kirby** (represented by John Edwards) and the client, Bretton Keefer. Afsoon Hagh signed the 2021 Agreement in her capacity as a representative of "Hagh Law," not in her individual capacity for personal liability. The 2021 Agreement explicitly identifies the legal counsel as "Hagh Law or Edwards Kirby," establishing privity between the client and the corporate entities, not Ms. Hagh individually. The 2021 Agreement allocates the contingency fee between Hagh Law and Edwards Kirby. It does not allocate any fee to Afsoon Hagh personally.

**E. Lack of Discovery and Evidence**

The Plaintiff initiated the underlying state court action in March 2022, which was subsequently removed to this Court. Since the inception of this litigation, Plaintiff has served no interrogatories on Ms. Hagh. Plaintiff has taken no depositions of Ms. Hagh or any corporate representative of Hagh Law PLLC. Plaintiff has served no requests for admission upon Ms. Hagh. There is no evidence in the record that Ms. Hagh personally, rather than Hagh Law PLLC, retained custody of the disputed attorney's fees.

## III. STANDARD OF REVIEW

Summary judgment is the procedural mechanism designed to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 Advisory Committee Notes (1963). Under Federal Rule of Civil Procedure 56(a), applicable here via Federal Rule of Bankruptcy Procedure 7056, judgment "shall" be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court's decision in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), fundamentally shifted the burden in summary judgment proceedings. The moving party is not required to produce evidence negating the opponent's claim. Rather, the movant need only demonstrate that the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

When the non-moving party bears the burden of proof at trial—as Mr. Cummings does here on his claims of contract breach and unjust enrichment—the moving party may discharge its burden by "pointing out to the district court... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once this showing is made, the burden shifts to the non-movant to "go beyond the pleadings" and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

Tennessee law, which governs the substantive claims in this adversary proceeding, aligns with the federal standard. In *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235 (Tenn. 2015), the Tennessee Supreme Court adopted the *Celotex* standard, overruling prior state precedents that placed a heavier burden on movants. Under *Rye*, summary judgment is mandated when the non-movant's evidence is insufficient to establish an essential element of their claim. *Id.* at 264.

Here, Ms. Hagh asserts that Mr. Cummings cannot prove essential elements of his claims: (1) that she is personally liable despite the corporate shield; (2) that he is contractually entitled to a fee despite withdrawing; and (3) that he conferred a benefit on her individually. Because he has conducted no discovery, he has no evidence to rebut this assertion, making summary judgment mandatory.

## IV. ARGUMENT

### A.    Afsoon Hagh is not a Proper Party Defendant Under Tennessee's Revised LLC Act

The Plaintiff's decision to sue Afsoon Hagh in her individual capacity is a fatal legal error. The attorney's fees at issue were earned by and paid to "Hagh Law PLLC," a distinct legal entity. Tennessee law provides a robust statutory shield protecting LLC members from personal liability for the obligations of the entity, a shield the Plaintiff has failed to pierce.

### 1. The Statutory Shield of Limited Liability

Case 3:23-ap-90036   Doc 57   Filed 01/23/26   Entered 01/23/26 23:48:03   Desc Main
Document    Page 7 of 17

Tennessee's Revised Limited Liability Company Act (the "Revised Act") governs Hagh Law PLLC. A foundational principle of the Revised Act is the distinction between the entity and its members. Tenn. Code Ann. § 48-249-114 provides:

(A) The debts, obligations and liabilities of an LLC, whether arising in contract, tort or otherwise, are solely the debts, obligations and liabilities of the LLC; (B) A member, holder, director, manager, officer, employee or other agent of an LLC does not have any personal obligation, and is not otherwise personally liable, for the acts, debts, liabilities or obligations of the LLC.

This statutory language is unambiguous. It creates a presumption that liabilities arising from the business of the LLC—such as disputes over fee splits with co-counsel—rest solely with the LLC. The fees from the *Shoemaker* settlement were contractually owed to "Hagh Law," as evidenced by the 2021 Engagement Agreement. Ms. Hagh signed that agreement explicitly as a member of the firm, not in her personal capacity. Therefore, any claim for a portion of those fees lies against the firm, not Ms. Hagh personally.

While Tenn. Code Ann. § 48-249-1119(a) provides an exception for a professional's own "negligent or wrongful acts or omissions" (i.e., malpractice), this exception is strictly limited to professional services rendered to a client. It does not extend to general commercial disputes or fee disputes between attorneys. The dispute here is over a commercial obligation (the division of a fee), not a claim of

Case 3:23-ap-90036   Doc 57   Filed 01/23/26   Entered 01/23/26 23:48:03   Desc Main
Document     Page 8 of 17

professional malpractice by Ms. Hagh against a client. Therefore, the general limited liability rule of § 48-249-114 controls, shielding Ms. Hagh from personal liability.

## 2. Plaintiff Fails to Satisfy the "Veil Piercing" Standard

To circumvent the statutory shield, Mr. Cummings would need to "pierce the corporate veil." Tennessee courts exercise this power "with great caution and not precipitately." *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991). The Tennessee Supreme Court recently clarified and reaffirmed the rigorous three-part test for piercing the veil in *Youree v. Recovery House of East Tennessee, LLC*, 705 S.W.3d 193 (Tenn. 2025) (reaffirming *Continental Bankers Life Ins. Co. v. Bank of Alamo*, 578 S.W.2d 625 (Tenn. 1979)).

Under *Youree*, a plaintiff must prove:

1. Domination: The individual exercises such complete dominion over the entity that the entity has no separate mind, will, or existence of its own;

2. Fraud/Wrong: This control was used to commit fraud, a wrong, or a violation of statutory or other duty; and

3. Causation: The control and breach of duty proximately caused the injury or unjust loss complained of.

Mr. Cummings has failed to even allege facts supporting *any* of these elements, let alone produce evidence to survive summary judgment.

- No Domination: There is no evidence that Hagh Law PLLC is a sham entity, that it lacks capitalization, or that it fails to observe corporate formalities.

- No Fraud: There is no evidence that Ms. Hagh used the corporate form to defraud Mr. Cummings. The fees were paid to the firm in the ordinary course of business under a valid contract.

- No Causation: Mr. Cummings' alleged loss (failure to receive a fee) was caused by his own voluntary withdrawal and the terms of his contract, not by Ms. Hagh's use of the LLC form.

Without evidence to satisfy the *Youree* test, the corporate veil remains intact. As stated in *Miller v. Sabilia*, an LLC member cannot be sued simply by reason of membership in the LLC. Ms. Hagh is an improper defendant, and the claims against her must be dismissed.

**B.    PLAINTIFF CONTRACTUALLY FORFEITED HIS FEE BY VOLUNTARILY WITHDRAWING**

Even if Mr. Cummings had sued the proper party, his claim fails on the merits because he voluntarily withdrew from the *Shoemaker* representation. Under Tennessee contract law and the specific terms of the engagement agreement he drafted, this withdrawal extinguished his right to a contingency fee.

**1. The Contract Terms Bar Recovery Under *Contra Proferentem***

The relationship between Mr. Cummings and the client was governed by the 2017 Attorney-Client Agreement. Tennessee courts interpret contracts according to their plain terms, giving words their "natural and ordinary meaning." *Individual*

*Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019). Crucially, any ambiguity in an attorney-client fee agreement is strictly construed against the drafter—the attorney. *White v. Empire Exp., Inc.*, 395 F.W.3d 696, 714 (Tenn. Ct. App. 2012).

The 2017 Agreement, drafted by Mr. Cummings, creates a dispositive distinction between "Termination" (discharge by the client) and "Withdrawal" (voluntary exit by the lawyer):

- **Termination Clause:** "If you terminate the representation before the conclusion of the matter, we will additionally be entitled to receive from the proceeds of any recovery a reasonable fee for the work we have performed...".
- **Withdrawal Clause:** "We may choose to withdraw from representing you... A 'withdrawal' by this firm does not relieve you of the responsibility to pay advanced costs.".

The "Withdrawal" clause conspicuously omits any right to an attorney's fee. It reserves *only* the right to be reimbursed for "advanced costs." Under the canon of *expressio unius est exclusio alterius* (the expression of one thing implies the exclusion of others), the inclusion of a fee right in the termination clause and its exclusion in the withdrawal clause demonstrates a clear intent that no fee is owed upon voluntary withdrawal.

11

Mr. Cummings, as the sophisticated drafter, could have included language preserving his fee in the event of withdrawal. He did not. Under *contra proferentem*, this omission must be construed against him. The contract provides for expenses only—which he has already received. He is entitled to nothing more.

**2. Withdrawal Was Voluntary, Not "For Cause"**

Mr. Cummings attempts to avoid this contractual bar by claiming he was "ethically required" to withdraw. The record contradicts this assertion. The October 2, 2020 Withdrawal Letter cites "strained" relationships and "personal conflict" following comments by the client and co-counsel.

Under Tennessee Rule of Professional Conduct 1.16, "mandatory withdrawal" is required only if "the representation will result in violation of the Rules of Professional Conduct or other law" or the lawyer's physical/mental condition impairs representation. "Strained relationships" or a client's refusal to sign a *new* fee agreement (limiting online reviews) do not trigger mandatory withdrawal. They are grounds for *voluntary* withdrawal under Rule 1.16(b) (withdrawal permitted if it can be accomplished without material adverse effect). Tennessee courts and legal authorities generally hold that an attorney who voluntarily withdraws without "just cause" forfeits their right to a fee. *Lofton v. Fairmont Specialist Ins. Managers, Inc.* is instructive. There, the court held that an attorney who voluntarily withdrew because the client rejected a settlement offer (a disagreement on strategy) forfeited the fee, stating, "It is simply incongruous for

Lofton to agree to such contractual provision and then to withdraw when Maxey exercised her right".

Similarly, Mr. Cummings withdrew because he was unhappy with the client's comments and refusal to accept new terms. This was a strategic business decision, not an ethical compulsion. By prioritizing his comfort over the client's representation, he voluntarily abandoned the contract. He cannot now claim the benefits of a contract he chose to terminate.

## C. The Unjust Enrichment Claim is Barred By Law

Plaintiff attempts to plead around his contractual forfeiture by asserting a claim for unjust enrichment. This claim fails for three independent reasons under Tennessee law.

## 1. Existence of an Express Contract

It is a bedrock principle of Tennessee law that "unjust enrichment is a quasi-contractual theory... in which a court may impose a contractual obligation where one does not exist." *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998). However, courts will not impose a quasi-contract when a valid, express contract already governs the subject matter. *Jaffe v. Bolton*, 817 S.W.2d 19, 26 (Tenn. Ct. App. 1991); *Crye-Leike, Inc. v. Carver*, 415 S.W.3d 808 (Tenn. Ct. App. 2011).

Here, the subject matter—Mr. Cummings' compensation for the *Shoemaker* matter—was governed by the express 2017 Agreement. That agreement defined

exactly what he would be paid if he withdrew (costs only). He cannot use unjust enrichment to rewrite the terms of an agreement he drafted but now regrets.

## 2. Failure to Exhaust Remedies

To maintain an unjust enrichment claim against a third party (here, Ms. Hagh), a plaintiff must demonstrate that they have exhausted all remedies against the party with whom they were in privity (the client, Mr. Keefer). *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966). The Tennessee Supreme Court has emphasized that exhaustion of remedies against the direct obligor is a prerequisite to recovery against a third party.

Mr. Cummings was in privity with Mr. Keefer. If he believed he was owed a fee, his remedy was to sue Mr. Keefer for breach of contract or quantum meruit (claims he effectively waived by withdrawing). He has not shown that Mr. Keefer is insolvent or that pursuing him is futile; in fact, he settled the case against Keefer. He cannot skip the exhaustion requirement to target co-counsel directly.

## 3. Ms. Hagh Individually Was Not "Enriched"

The most basic element of unjust enrichment is that a benefit was conferred *upon the defendant*. The attorney's fees in the *Shoemaker* matter were paid to the law firms—Hagh Law PLLC and Edwards Kirby. Ms. Hagh, as an individual, did not receive these fees in her personal capacity; even assuming the facts alleged by Mr. Cummings were supported by admissible evidence—and they are not—the PLLC would have received these funds.

In *Howard v. Turnbull*, the court held that an LLC member cannot be sued for unjust enrichment regarding benefits conferred upon the LLC, as the "benefit" resides with the entity. Any alleged "enrichment" here would sit in the operating accounts of Hagh Law PLLC or the trust account holding the disputed funds—and Mr. Cummings has failed to marshal any evidence proving the existence or whereabouts of such funds. Under any standard, Ms. Hagh individually has received no benefit that would support a personal judgment against her.

**D.  Summary Judgment is Mandatory Due to Plaintiff's Failure to Prosecute Discovery**

Finally, summary judgment must be granted because Mr. Cummings has completely failed to prosecute his case or develop evidence to support his allegations.

This case has been pending for years. Yet, as the docket reflects, the Plaintiff has engaged in **no discovery**:

- He has not deposed Afsoon Hagh.

- He has not deposed Bretton Keefer.

- He has not deposed Jeanne Burton.

- He has not attempted to depose *anyone*.

- He has not served interrogatories to determine the flow of funds.

- He has not requested admissions regarding the contract or withdrawal.

In the Sixth Circuit, a plaintiff's failure to conduct discovery is fatal at the summary judgment stage. "The nonmoving party must do more than simply show

that there is some metaphysical doubt as to the material facts." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989) (adopting the "new era" of summary judgment under *Celotex*). Where a plaintiff fails to substantiate their claims with record evidence—relying instead on the allegations of the complaint—summary judgment is appropriate. *Shorts v. Bartholomew*, 255 F. App'x 46, 50 (6th Cir. 2007).

Mr. Cummings alleges that Ms. Hagh is personally liable. He bears the burden of proof. Yet he has no contract signed by her individually. He has no bank records showing she holds the funds personally. He has no evidence of fraud to pierce the corporate veil. And he has developed no testimony to establish the elements of his claims. Without such evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court cannot allow a plaintiff to survive summary judgment on mere speculation. Mr. Cummings' failure to conduct discovery is a concession that no such evidence exists.

## V. CONCLUSION

Brian Cummings drafted a contract that denied him a fee if he quit. He then quit. Now, he seeks to rewrite that contract and sue an individual attorney for fees earned by corporate entities, all while failing to conduct a shred of discovery to support his claims.

The law protects Ms. Hagh from personal liability for her firm's obligations. The contract bars Mr. Cummings' recovery due to his voluntary withdrawal. The doctrine of unjust enrichment does not apply where an express contract exists. And the rules of civil procedure demand that a plaintiff present evidence to survive summary judgment—evidence Mr. Cummings simply does not have.

For all these reasons, there are no genuine issues of material fact, and Defendant Afsoon Hagh is entitled to judgment as a matter of law.

Date:  January 23, 2026

Respectfully submitted,

*/s/ John Spragens*
John Spragens (TN Bar No. 31445)
Spragens Law PLC
915 Rep. John Lewis Way S., Suite 100
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Bretton Keefer and Afsoon Hagh*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed January 23, 2026 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

*/s/ John Spragens*

Case 3:23-ap-90036   Doc 57   Filed 01/23/26   Entered 01/23/26 23:48:03   Desc Main
Document     Page 17 of 17