| | |
|---|---|
| **IN RE:** | **Case No. 3:19-bk-07235** |
| | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC** | **Judge Walker** |
| Debtor. | **Adv. Proc. No. 3:23-ap-90036** |
| **BRIAN CUMMINGS,** | |
| Plaintiff, | |
| **v.** | |
| **BRETTON KEEFER, JEANNE BURTON, and AFSOON HAGH** | |
| Defendants. | |

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

### INTRODUCTION

This adversary proceeding encompasses a complex, multi-year, and vigorously contested dispute over attorney's fees arising from the settlement of a wrongful death action. The litigation has traversed multiple levels of the federal judiciary, from the United States Bankruptcy Court for the Middle District of Tennessee to the United States District Court and ultimately to the United States Court of Appeals for the Sixth Circuit.

Defendants Bretton Keefer and Afsoon Hagh (collectively, "Defendants") have maintained a persistent, active, and substantive defense against the claims asserted by Plaintiff Brian Cummings ("Plaintiff"). They have filed dispositive

motions, briefed complex appellate issues, appeared at court-ordered status conferences, and engaged in the formulation of pretrial scheduling orders.

Plaintiff's *Motion for Default Judgment Against Defendants Bretton Keefer and Afsoon Hagh* filed on January 23, 2026 is a non-substantive, strategic maneuver deployed on the very eve of trial, which ignores the overarching reality of this litigation: The Defendants have been present, represented by counsel, and actively litigating this case since its inception. To brand them as "absent" litigants warranting default is legally frivolous.

The Plaintiff's Motion is not merely untimely; it is a calculated ambush. Plaintiff stipulated to a Pretrial Order setting a dispositive motion deadline of January 23, 2026. Despite taking no discovery himself, he doubtless expected Defendants to expend significant resources preparing those motions. Then, on the very day those motions were due, he moved for default – attempting to snatch a victory on technical grounds because he fears a loss on the merits. This synchronization confirms that the Plaintiff's Motion is not a genuine response to an absent defendant or a failure to defend, but rather a calculated attempt to preempt a ruling on the merits of the Defendants' summary judgment arguments.[1]

Granting a default judgment in this context would stand in direct contradiction to the "strong preference for trials on the merits" that defines Sixth Circuit jurisprudence, and it would reward a tactic that the Federal Rules of Civil

---

[1] These summary judgment motions expose fatal, dispositive defects in the Plaintiff's claims, including contractual bars to recovery based on his voluntary withdrawal and statutory corporate shields protecting individual defendants from liability.

Procedure were specifically designed to prevent. Furthermore, it would ignore the years of litigation that have preceded this moment, during which the Plaintiff actively engaged with the Defendants as adversaries, thereby waiving any right to claim Defendants were in default.

Moreover the prevailing *United Coin Meter* standard in the Sixth Circuit mandates denial of Plaintiff's motion: the Defendants have "otherwise defended" this action within the meaning of the Fed. R. Civ. P. 55; the Plaintiff has suffered no prejudice; the Defendants possess meritorious defenses that are likely to dispose of the case; and there has been no culpable conduct warranting the drastic sanction of default.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

A basic review of the procedural history of this dispute confirms that the entry of default is legally unfounded and factually inappropriate. This is not a case where a complaint was served and silence followed. It is a complex fee dispute rooted in the dissolution of a law firm and the subsequent settlement of a wrongful death action, *Keefer v. Vanderbilt University Medical Center* (the "Shoemaker Matter"), which has been the subject of extensive litigation in state court, district court, bankruptcy court, and the appellate circuit.

### A. The Underlying Dispute and the 2017 Engagement Agreement

In April 2017, Plaintiff Brian Cummings, then a partner at the law firm Cummings Manookian, PLC, signed Mr. Keefer as a client via an Attorney-Client

Agreement (the "Cummings Agreement"). The contract, drafted and signed <u>by the Plaintiff himself</u>, established the terms of the representation and the conditions under which attorney's fees would be earned. Specifically, the Agreement included a contingency-fee provision stating that such a fee would be paid to Mr. Cummings "only if Mr. Keefer received a monetary award via settlement, judgment, or award."

The Cummings Agreement also differentiated between two specific means of terminating the attorney-client relationship—distinguishing, on the one hand, a situation in which the client "discharges" the firm, from one in which the firm "withdraws" from representation. Under the terms drafted by the Plaintiff, Brian Cummings:

- If the client <u>terminated</u> the representation, the firm might be entitled to a *quantum meruit* fee or a reasonable fee based on work performed.
- If the attorney or firm chose to <u>withdraw</u>, they would only be entitled to reimbursement or their advanced costs and expenses.

This contractual distinction, which unambiguously limited a withdrawing attorney to be paid only the reimbursement of his costs, is the central pillar of the Defendants' argument for resolving this case on its merits.

**B. The Plaintiff's Voluntary Withdrawal in October 2020**

On or about October 2, 2020, Plaintiff Brian Cummings sent a private letter to Defendants Keefer and Hagh communicating his withdrawal. As the bases for his departure, Plaintiff at that time identified only "strained" working relationships

and specific comments made by the client and co-counsel. Much later, after the commencement of this litigation, Plaintiff instead asserted that his withdrawal was "ethically required" by an unrecorded, undocumented conversation he purports to have had with an unnamed individual at the Tennessee Board of Professional Responsibility ("BPR") on an unspecified date. Mr. Cummings has never disclosed the content of the alleged discussion beyond this self-serving directive.

The reality remains that the Plaintiff was not "terminated" within the plain meaning of the Cummings Agreement. Plaintiff was not fired or asked to leave, and was in fact scheduled to take depositions in the case the following week. Instead of doing so, he quit. Plaintiff announced he was leaving on a personal vacation and left his client and co-counsel to deal with the fallout. He "withdrew" under the terms of the Cummings Agreement, and the state court accordingly on November 20, 2020 granted his Motion to Withdraw.

### C. The Commencement of the Adversary Proceeding and Active Defense

The current adversary proceeding began in the Circuit Court for Davidson County, Tennessee, on March 29, 2022, with the filing of the Plaintiff's Amended Complaint. The matter was removed to the United States District Court for the Middle District of Tennessee by Jeanne Burton, Trustee for Cummings Manookian, PLC, and subsequently referred to this Bankruptcy Court by order of Chief District Judge Waverly D. Crenshaw, Jr. on March 13, 2023.

From the moment this case arrived in federal court, the Defendants have actively participated in it. They did not ignore the summons. They retained counsel to represent their interests and have vigorously defended against the Plaintiff's claims through every available procedural mechanism.

### 1. The Motion to Dismiss (May 4, 2023)

On May 4, 2023, Defendants Afsoon Hagh and Bretton Keefer filed a Motion to Dismiss Adversary Proceeding in direct response to the Complaint and including their defenses thereto. The Motion argued that the dispute was subject to mandatory arbitration under the terms of the engagement agreement and that the Plaintiff had failed to state a claim upon which relief could be granted. This filing consisted of a comprehensive memorandum of law and seven exhibits supporting the Defendants' position.

The filing of this Rule 12 motion served as a definitive "otherwise defending" action under Rule 55(a), signaling to the Court and the Plaintiff that the Defendants intended to contest liability. The Court acknowledged this defense by entering an Order on May 25, 2023, scheduling an evidentiary hearing regarding the Motion to Dismiss. This period of litigation clearly established the Defendants as active parties contesting the Plaintiff's claims.

### 2. The Appellate Phase (2024–2025)

Following the Bankruptcy Court's denial of the Motion to Dismiss, the Defendants did not fall silent or refuse to further participate. They pursued their

defenses through the federal appellate courts, exercising their rights to seek review of the Bankruptcy Court's decision regarding arbitration and jurisdiction.

The Defendants timely filed a Notice of Appeal to the United States District Court for the Middle District of Tennessee. The appeal was fully briefed and litigated. On June 18, 2024, the District Court entered a Memorandum and Order affirming the Bankruptcy Court's decision.

Maintaining their legal position, the Defendants appealed to the United States Court of Appeals for the Sixth Circuit. This appellate process consumed the entirety of 2024 and nearly half of 2025. On July 16, 2025, the Sixth Circuit issued its Final Order affirming the judgment.

During the two-year appellate phase, the Defendants filed briefs, presented legal arguments, and maintained their position that the Plaintiff's claims were legally barred. The Plaintiff actively participated in these appeals and responded to the Defendants' arguments in his own filings. The appellate litigation demonstrates a continuous, unbroken chain of defense. At no point did the Defendants abandon the field or evince an intent not to defend the suit.

### 3. Pretrial Management and Return to Bankruptcy Court (2025)

Following the issuance of the Sixth Circuit Court's mandate, the case returned to the active docket of this Bankruptcy Court. The Defendants continued to participate in the management of the case, complying with court orders and engaging in scheduling.

On August 8, 2025, the Court entered an order scheduling a Status Conference hearing for September 10, 2025. Defendants appeared through counsel at that Conference, where Plaintiff's counsel was also present.

At the conference, the parties discussed the future trajectory of the case—selecting and confirming dispositive motions deadlines and a trial date, and clearly implying that the matter would be resolved on its merits, likely through summary judgment or trial. The Plaintiff raised no objection to the Defendants' standing to participate, nor did he suggest that a default was impending due to the lack of a formal, post-remand Answer.

Following this conference, the Court entered a Pretrial Order on September 18, 2025. This order set explicit deadlines for the litigation, structuring the case for a resolution on the merits. This Pretrial Order was subsequently amended on January 23, 2026. The Amended Pretrial Order kept the dispositive motion deadline set for January 23, 2026, and reset the trial date for March 18, 2026.

The Defendants' participation in crafting these orders and appearing at these conferences is fundamentally inconsistent with the status of a party in default.

**4. The Filing of Summary Judgment Motions (January 23, 2026)**

The Defendants' continuous advocacy for their positions culminated on January 23, 2026—the deadline set by the Court for dispositive motions—when the Defendants filed their Motions for Summary Judgment, supported by Memoranda of Law and Statements of Undisputed Material Facts.

The Defendants' motions presented comprehensive legal arguments supported by the factual record, seeking a judgment as a matter of law based on multiple defenses, including:

1. **Contractual Bar:** The Plaintiff's voluntary withdrawal limits his recovery to costs under the 2017 Agreement.

2. **Corporate Shield:** Defendant Hagh is shielded from personal liability by the Tennessee Limited Liability Company Act.

3. **Nominal Party:** Defendant Keefer has no financial interest in the outcome.

It is no coincidence that the Plaintiff filed his Motion for Default Judgment on the exact same day. Faced with dispositive arguments that threatened to end his case on the merits, the Plaintiff attempted to short-circuit the process by seeking a technical default. This sequence of events confirms that the Defendants are not absent parties, but effective adversaries whom the Plaintiff seeks to silence through procedural gamesmanship. (See Table 1, endnote).

**ARGUMENT**

## I. THE "OTHERWISE DEFEND" REQUIREMENT OF RULE 55(a)

The Plaintiff's Motion for Default Judgment relies on a fundamental misapplication of Federal Rule of Civil Procedure 55(a). The Rule states: "When a party against whom a judgment for affirmative relief is sought has failed to plead or <u>otherwise defend</u>, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."

The disjunctive "or" is the operative term in this rule. A defendant avoids default *either* by pleading (filing an Answer) *or* by "otherwise defending" the action. The Federal Rules do not require a defendant to do both to avoid default; one sufficient act of defense precludes the entry of default by the clerk.

## A. The Broad Scope of "Otherwise Defend"

The phrase "otherwise defend" within Fed. R. Civ. P. 55 has been interpreted by federal courts to encompass a broad range of litigation activities that signal an intent to contest the suit. It is not limited strictly to the filing of a Rule 12 motion but includes any action that demonstrates the defendant's intention to engage with the judicial process and prevents the plaintiff's claim from going unanswered. Rule 55 is designed to address the "absentee" defendant—the party who receives service and does nothing. It is not a trap for the litigant who is actively fighting the case but may have missed a pleading deadline while waiting for an appellate mandate or preparing a dispositive motion.

The filing of a motion to dismiss unambiguously constitutes "otherwise defending" the action and precludes the entry of default. *Sandoval v. Bluegrass Reg'l Mental Health-Mental Retardation Bd.*, 229 F.3d 1153 (Table) at *5 (6th Cir. 2000) (defendant who did not file answer nonetheless "did 'otherwise defend' herself with motion to dismiss for failure to effect service") (citing *Bass v. Hoagland*, 172 F.2d 205, 210 (5th Cir.), *cert. denied*, 338 U.S. 816 (1949)). *See also*, *Harris v. Audi Nashville*, No. 3:24-CV-0791, 2024 WL 4267196 (M.D. Tenn. Sept. 23, 2024) ("The words 'otherwise defend' presume the absence of some

affirmative action on the part of a defendant which would operate as a bar to the satisfaction of the moving party's claim;" defendant not in default after entering appearance and filing motion to dismiss) (quoting *Wickstrom v. Ebert*, 101 F.R.D. 26 (E.D. Wis. 1984) (motion to dismiss constitutes "otherwise defending" the action and precludes default); *Oakworth Cap. Bank v. RC Nashville Dev. Partners, LLC*, No. 3:23-CV-01145, 2023 WL 12018801, at *2 (M.D. Tenn. Dec. 13, 2023) ("Rule 55(a) does not require a responsive pleading or Rule 12(b) motion to ward off entry of default"); *Tulis v. Orange*, No. 3:22-CV-00911, 2023 WL 2903669, at *1 (M.D. Tenn. Apr. 10, 2023) (motions to dismiss sufficiently "otherwise defended" even in absence of answer); *Cannon v. Washington*, 321 Fed. Appx. 501, 503 (7th Cir., 2009) (even in absence of a Rule 12 Answer, defendants who participated in discovery and filed motion for summary judgment had "otherwise defended" the action) (citing *Wickstrom*, *supra*, and *Rashidi v. Albright*, 818 F. Supp. 1354 (D. Nev. 1993) (motion for summary judgment constitutes defense against lawsuit for purposes of Rule 55). The *Rashidi* court specifically found "little reason to require a long, burdensome and expensive investigation to file an answer when the contents of the answer may be entirely useless by the dispositive nature of the action on the motion." *Rashidi*, 818 F. Supp at 1357 (*affirmed by Rashidi v. Albright*, 39 F.3d 1188 (9th Cir., 1994)).

## B.  Application to the Present Case

Rule 55 is designed to protect plaintiffs from *unresponsive* defendants. It is not a weapon to be used against defendants who are actively litigating. Applying

this standard to the facts at hand, it is indisputable that Defendants Keefer and Hagh have "otherwise defended" this action. Their defense has been multi-faceted and continuous.

The filing of the Motion to Dismiss in May 2023 satisfied the "otherwise defend" requirement at the outset of the case. By challenging the legal sufficiency of the complaint and asserting affirmative defenses (i.e., the arbitration clause), the Defendants actively joined the litigation. This act alone removed the case from the realm of "default" scenarios in which a defendant simply ignores the summons.

The Defendants' appeals to the District Court and the Sixth Circuit continued their vigorous defense and placed the Plaintiff on notice that the Defendants were contesting liability. A party does not spend two years litigating appellate issues if they intend to abandon the case, and the Plaintiff cannot credibly claim that the Defendants have failed to defend when he has spent the last two years reading their briefs and listening to their arguments in the Court of Appeals.

The filing of Motions for Summary Judgment on January 23, 2026, definitively establishes that the Defendants are defending the action. As in *Rashidi*, the filing of a summary judgment motion—which seeks a judicial determination that the Plaintiff's claims fail as a matter of law—is an act of defense that precludes default.

The Plaintiff's argument for default ignores this entire history. It asks the Court to focus on a single missing document—the formal Answer following the appellate remand—while ignoring the mountain of filings, briefs, orders, and

motions that the Defendants have submitted. This elevation of form over substance is rejected by the Federal Rules, which are to be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Entering default against active litigants violates this core canon.

## II. EQUITABLE DOCTRINES: WAIVER AND LACHES

Beyond the textual requirements of Rule 55(a), the Plaintiff is barred from seeking a default judgment by the equitable doctrines of waiver and laches. The Plaintiff's conduct over the past three years—specifically, his active engagement with the Defendants in litigation—constitutes a waiver of his right to seek a default based on any alleged failure to plead.

### A. Waiver by Active Participation

It is a well-settled principle of federal procedure that a plaintiff waives the right to default judgment by active participation in the litigation. *See*, *O.J. Distributing, Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 357 (6th Cir. 2003) (abrogated on other grounds by *Morgan v. Sundance, Inc.*, 596 U.S. 411, 415, 142 S. Ct. 1708, 1712, 212 L. Ed. 2d 753 (2022)).

In *O.J. Distributing*, the Sixth Circuit found waiver where a plaintiff engaged in settlement negotiations and litigation for months before seeking default. The court reasoned that it would be inequitable to allow a plaintiff to treat a defendant as an active participant for one purpose while simultaneously claiming they are in default for another.

Here, the Plaintiff's active participation is undeniable. He responded to the Defendants' Motion to Dismiss. He briefed and argued the appeals in the District Court and the Sixth Circuit. But Plaintiff's waiver is most evident in his participation in the September 17, 2025 Pretrial Conference. By agreeing to a schedule that set a trial date and a deadline for dispositive motions, Plaintiff affirmatively represented to the Court and Defendants that this case would be decided on the merits. He cannot agree to a trial schedule in September and then claim in January that the Defendants defaulted years ago. At no point during these years of litigation did the Plaintiff move for default or suggest that the Defendants were in default.

By continuing to litigate the case on its merits—arguing regarding arbitration, jurisdiction, and discovery scheduling—the Plaintiff induced the Defendants to believe that the case was being contested and would be resolved through the normal adversarial process. To file a default motion now, after years of treating the Defendants as active adversaries, is the definition of waiver by conduct. The Plaintiff cannot have it both ways: he cannot litigate against the Defendants when he thinks he can win on the law in the appellate courts, and then seek default when he realizes he will lose on summary judgment in the bankruptcy court.

### B. Laches: Unreasonable Delay

The doctrine of laches bars a claim where there has been an unreasonable delay in asserting a right that results in prejudice to the opposing party. The

Plaintiff waited nearly three years from the commencement of this adversary proceeding to file his Motion for Default Judgment. While the appellate process accounts for some of this time, the Plaintiff had ample opportunity to raise the issue of default regarding the initial responsive pleading timeline or immediately following the appellate mandates.

Instead, the Plaintiff slept on his rights. He allowed the Defendants to expend significant resources on appellate litigation and motion practice. He allowed the Court to expend judicial resources scheduling conferences and managing the docket. This delay was unreasonable. If the Plaintiff believed the Defendants were in default, the time to raise that issue was years ago, not on the same day the Defendants filed for summary judgment. This delay prejudices the Defendants by forcing them to litigate under the shadow of a procedural technicality after they have already fully committed to a defense on the merits.

The Court should not countenance such dilatory tactics. The Plaintiff's failure to move for default at any earlier stage of this years-long litigation confirms that this Motion is a tactical afterthought, not a genuine attempt to address a failure to defend.

### III. THE *UNITED COIN METER* FACTORS: A MANDATE FOR DENIAL

Even if the Court were to determine that the Defendants were in technical default—a conclusion the Defendants vigorously dispute—the Motion must still be denied under the controlling legal standard for the Sixth Circuit. The entry of

default judgment is a matter of judicial discretion, governed by the strong public policy favoring trials on the merits.

The Sixth Circuit applies the *United Coin Meter* test to determine whether to grant a default judgment or set aside an entry of default. *Courser v. Allard*, 969 F.3d 604, 624 (6th Cir. 2020) (citing *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 846 (6th Cir. 1983) ("[j]udgment by default is a drastic step which should be resorted to only in the most extreme cases"). To guide this discretion, the court articulated three factors that must be balanced:

1. Whether the plaintiff will be prejudiced;

2. Whether the defendant has a meritorious defense; and

3. Whether the culpable conduct of the defendant led to the default.

*See also Dassault Systemes, SA v. Childress*, 663 F.3d 832, 839 (6th Cir. 2011). An analysis of these factors in the present case demonstrates that default judgment is wholly inappropriate.

### A. No Prejudice to the Plaintiff

The first factor requires the Plaintiff to demonstrate that he will suffer tangible, concrete prejudice if the motion is denied and the case proceeds to a decision on the merits. The Sixth Circuit has been explicit: "Delay alone is not a sufficient basis for establishing prejudice." *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 842 (6th Cir. 2011) (quoting *INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 398 (6th Cir. 1987)).

To establish prejudice sufficient to warrant default, the plaintiff must show that the delay will result in (1) the loss of evidence, (2) increased difficulties of discovery, or (3) greater opportunity for fraud and collusion. *Id.* The Plaintiff cannot make this showing in this case.

### 1.  No Loss of Evidence or Increased Difficulties in Discovery

The Plaintiff has conducted zero discovery in this case. He has served no interrogatories, taken no depositions, and requested no documents from the Defendants. Consequently, he cannot claim that the passage of time has hindered his ability to gather evidence. He has not sought any evidence to lose. Furthermore, the key evidence in this case is documentary and largely already in the record: the 2017 Engagement Agreement, the 2020 Withdrawal Letter, and the court orders from the *Shoemaker Matter*. These documents are preserved and immutable. They are not subject to the fading memories of witnesses or the degradation of physical evidence. The delay in filing an Answer has had absolutely no impact on the evidentiary record available to the Plaintiff.

### 2. Absence of Fraud or Collusion

There is no allegation, let alone evidence, of fraud or collusion that would be exacerbated by denying the default. The Defendants are represented by reputable counsel and are participating in the court's processes. The only "prejudice" the Plaintiff suffers by the denial of this motion is the requirement that he prove his case on the merits—a requirement that is the foundation of our legal system, not a form of prejudice.

## B. The Defendants Possess Meritorious Defenses

The second, and perhaps most critical, factor is whether the Defendants have a meritorious defense. The standard for this factor is extremely low. The Defendants need not prove that they will inevitably win at trial; they need only state a defense that is "good at law." *Dassault*, 663 F.3d at 843 (citing *U.S. v. $22,050.00 U.S. Currency*, 595 F.3d 318, 326 (6th Cir. 2010) (quoting *United Coin Meter*, 705 F.2d at 845)). A defense is sufficient if it contains "even a hint of a suggestion which, proven at trial, would constitute a complete defense." *$22,050.00 U.S. Currency, supra* (citing *INVST Fin. Group,* 815 F.2d at 399).

The Defendants in this case have far more than a "hint of a suggestion." They have asserted robust, dispositive defenses rooted in contract law, statutory corporate law, and the findings of the District Court. These defenses are fully detailed in the Motions for Summary Judgment filed contemporaneously with the Plaintiff's default motion, and are summarized below.

### 1. The Contractual Bar: Withdrawal vs. Termination

The Plaintiff's claim for a fee is barred by the plain language of the contract he drafted. The 2017 Attorney-Client Agreement (the "Cummings Agreement") governed the relationship between the Plaintiff and Mr. Keefer. As is standard in contingency fee agreements, it addressed what would happen if the relationship ended before a recovery was secured. The agreement distinguished between "Termination" (where the client fires the attorney) and "Withdrawal" (where the attorney quits).

Under Tennessee law, ambiguous contract terms are construed against the drafter. However, this contract is not ambiguous. It provided that if the client terminated the firm, the firm might be entitled to a *quantum meruit* fee. But it provided solely for reimbursement to advanced costs and expenses in the event of a withdrawal. It did not reserve a right to a fee.

Because the Plaintiff withdrew voluntarily, his recovery is limited by the contract to advanced costs. The Plaintiff admits he has already been reimbursed over $60,000 in costs. Therefore, he has been paid everything he is contractually owed. This defense is "good at law" and constitutes a complete bar to his claim for a contingency fee.

### 2. The Corporate Shield Defense (Defendant Hagh)

The Plaintiff has sued Defendant Afsoon Hagh in her individual capacity. This violates the fundamental tenets of corporate law and the Tennessee Revised Limited Liability Company Act.

Ms. Hagh practices law through Hagh Law, PLLC, a professional limited liability company organized under Tennessee law. The fees generated in the *Shoemaker Matter* belong to the PLLC by express contract signed with the client, not to Ms. Hagh personally.

Tenn. Code Ann. § 48-249-114 explicitly provides that a member of an LLC is not personally liable for the debts, obligations, or liabilities of the LLC, whether arising in contract, tort, or otherwise.

The Plaintiff has alleged no facts sufficient to pierce the corporate veil. There is no allegation of fraud, undercapitalization, or alter ego status that would justify ignoring the corporate form. Accordingly, Ms. Hagh is statutorily shielded from personal liability for any fee dispute involving her firm. This statutory immunity is a meritorious defense that renders the claim against her individually defective.

### 3. Nominal Defendant Status (Defendant Keefer)

The Plaintiff persists in suing his former client, Bretton Keefer, despite the fact that Mr. Keefer has no stake in this dispute and he seeks no actual relief from Mr. Keefer.

Mr. Keefer is a "nominal defendant." He stands to gain or lose nothing from this litigation. Moreover, the Plaintiff stands to gain or lost nothing from Mr. Keefer as he has not asserted that Mr. Keefer owes him anything. Whether the money goes to Mr. Cummings, Ms. Hagh, or the Bankruptcy Trustee, Mr. Keefer's recovery remains unchanged. A default judgment against a nominal defendant with no financial interest or liability exposure is a legal nullity and a waste of judicial resources.

### C. No Culpable Conduct

The third factor asks whether the default was willful. "To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Dassault*, 663 F.3d at 841 (quoting *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986)). Simple negligence,

or a strategic decision to focus on dispositive motions, does not constitute culpability.

The Defendants' conduct in this case cannot be characterized as "willful" evasion or "reckless disregard." As detailed in Section II, the Defendants have been actively engaged in this case for years. They have filed motions, briefed appeals, and appeared at conferences. This is not the behavior of a party intending to thwart the court; it is the behavior of a party respecting the process.

Moreover, the filing of the Motions for Summary Judgment on January 23, 2026, demonstrates a clear intent to defend the case on the merits. A party intending to evade judgment does not spend the considerable time, money, and resources to draft comprehensive summary judgment briefs and associated filings.

Finally, there is no evidence of disrespect for, or turning away from the process of, the Court. The Defendants have participated at every turn. To punish this participation with the "drastic" sanction of default would be an abuse of discretion and a miscarriage of justice.

## CONCLUSION

This case is not a default case. It is a vigorously contested fee dispute that has been actively litigated in three federal courts over three years. The Defendants have "otherwise defended" this action within the meaning of Rule 55(a) by filing motions to dismiss, pursuing appeals, appearing at conferences and hearings— both in Nashville and Cincinnati—and filing motions for summary judgment. The

Plaintiff, by participating in this litigation without raising the issue of default for years, has waived his right to seek it now.

Moreover, the equitable factors of the *United Coin Meter* test overwhelmingly favor the Defendants: the Plaintiff suffers no prejudice; the Defendants possess dispositive defenses; and their conduct has been that of conscientious litigants. The Plaintiff's Motion is a transparent attempt to avoid a ruling on the merits of his contractually barred claims. It is an eve of trial maneuver that should be rejected.

For all of the foregoing reasons, Defendants Bretton Keefer and Afsoon Hagh respectfully request that this Honorable Court deny the Plaintiff's Motion for Default Judgment in its entirety.

Date: February 9, 2026

Respectfully submitted,

*/s/ John Spragens*
John Spragens (TN Bar No. 31445)
Spragens Law PLC
915 Rep. John Lewis Way S
Suite 100, Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Bretton Keefer and Afsoon Hagh*

## Table 1: Chronology of Active Defense

| Date | Procedural Event | Docket | Significance |
|---|---|---|---|
| 03/13/2023 | Case referred to Bankruptcy Court. | Doc. 2 | Commencement of federal proceedings. |
| 05/04/2023 | Defendants file Motion to Dismiss. | Doc. 9 | Initial "otherwise defending" action under Rule 55(a). |
| 05/25/2023 | Court enters Order Scheduling Hearing. | Doc. 10 | Court acknowledgement of active defense. |
| 09/08/2023 | Notice of Appeal to District Court filed. | Doc. 21 | Defendants pursue appellate review. |
| 06/18/2024 | District Court enters Order on Appeal. | Doc. 32 | Defendants actively litigating in appellate court. |
| 07/16/2025 | Sixth Circuit enters Final Order. | Doc. 41 | Defendants actively litigating in highest circuit court. |
| 09/17/2025 | Defendants appear at Pretrial Status Conference. | Doc. 45 | Confirmation of ongoing participation and intent to defend. |
| 09/18/2025 | Court enters Pretrial Order setting Deadlines. | Doc. 45 | Defendants participating in scheduling. |
| 01/23/2026 | Defendants file Motions for Summary Judgment. | Doc. 56, 58 | Dispositive defense on the merits. |
| 01/23/2026 | Plaintiff files Motion for Default. | Doc. 54 | Attempt to preempt summary judgment. |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was filed February 9, 2026 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

*/s/ John Spragens*