**SO ORDERED.**
**SIGNED 19th day of March, 2026**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**



**Charles M. Walker**
**U.S. Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) Case No: 3:19-bk-07235 |
| Cummings Manookian, PLLC, | ) Chapter 7 |
| | ) Honorable Charles M. Walker |
| Debtor. | ) |
| | ) |
| | ) |
| Brian Cummings, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proc. 3:23-ap-90036 |
| | ) |
| Bretton Keefer; Jeanne Burton, Trustee[1]; | ) |
| And Afsoon Hagh, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### ORDER GRANTING MOTION FOR DEFAULT JUDGMENT AND DENYING MOTION FOR LEAVE TO FILE ANSWERS INSTANTER

This matter was before the Court for Final PreTrial Conference, held five days before Trial. Amongst several other motions pending before the Court were the Plaintiff's Motion for Default Judgment (ECF 54) and the Defendants' Motion for Leave to File Answers Instanter (ECF89).[2]

The Court has heard argument of counsel and considered all pleadings and finds in favor of the Plaintiff and against the Defendants for the reasons set forth below.

---

[1] Defendant Jeanne Burton, Trustee, has entered into a settlement agreement with the Plaintiff and did not participate in these proceedings.

[2] There were several other pretrial matters and motions on the docket that were all mooted by this ruling.

1

Plaintiff filed the Complaint in this matter on March 22, 2022, in the Circuit Court for Davidson County, Tennessee. (See ECF 1). The case was removed to the District Court for the Middle District of Tennessee in April of 2022. After numerous attempts at service on the Defendants Bretton Keefer and Afsoon Hagh (herein "Defendants"[3]) taking over eleven months and requiring several reissued and alias summonses, the Plaintiff filed a Motion for Default on February 10, 2023.[4] After referral to the Bankruptcy Court on March 13, 2023, the Defendants filed a Motion to Dismiss, appealing the bankruptcy court's Order Denying that motion all the way to the Sixth Circuit. The Sixth Circuit's final disposition was issued on July 16, 2025, affirming the bankruptcy court's denial. At that point, the clock started ticking again and the Defendants had 14 days to file their Answers. The bankruptcy court then set a status hearing for September 10, 2025, and entered an Order setting forth pretrial deadlines and a trial date of March 23, 2026.[5]

For the next three months nothing was filed by either party.[6] On January 23, 2026, at 10:50 am, the Plaintiff filed a Motion Requesting Entry of Default from Clerk in Adversary Proceeding (ECF 49), and a Motion for Default Judgment (ECF 54) that same day at 4:57 p.m. That evening, at 11:46 pm, the Defendants filed their Motions for Summary Judgment (ECF 56 and 57). On February 9, 2026, the Defendants filed their Response to the Motion for Default Judgment. (ECF 72). On March 12, 2026, Defendants moved for Leave to file Answers Instanter

---

[3] Although Jeanne Burton, Trustee, is a named Defendant, she is not included in the term "Defendants" for the purpose of these proceedings given her Settlement Agreement with the Plaintiff.

[4] The Motion was resolved by an Agreed Order between the parties wherein attorney John T. Spragens was authorized to accept service of process on behalf of the Defendants Bretton Keefer and Afsoon Hagh, and the Defendants agreed to file a response to the Amended Complaint by April 28, 2023.

[5] The original trial date was March 26, 2026, but was changed by Amended Order of the Court.

[6] This was probably because of the progression to trial of a related adversary proceeding.

2

(ECF 89). Plaintiffs and Defendants filed their motions *in limine* on March 6, 2026, with the Plaintiff responding to Defendants' motions on March 11, 2026, and the Defendants responding to the Plaintiff's on March 17, 2026 at 10:32 pm – less than twelve hours before the scheduled PreTrial Conference.

<u>Discussion and Authority</u>

The Defendants argue that they have maintained a "persistent, active, and substantive defense" against the claims in this case by filing dispositive motions, briefing their appellate issues, appearing at court-ordered status conferences, and engaging in the formulation of pretrial scheduling orders (ECF 72). What is conspicuously left off the list supporting their position is the filing of any answer or the proper assertion of any defenses to the allegations in the Complaint.

<u>Federal Rule of Civil Procedure 55</u>

Defendants argue that their motion to dismiss – filed on May 4, 2023 - constitutes "otherwise defending" under Rule 55(a) and therefore precludes entry of the default. They cite to *Sandoval v. Bluegrass Regional Mental Health-Mental Retardation Board* for this premise. 2000 WL 1257040 (6th Cir. 2000). However, the motion to dismiss here was filed 2-1/2 years ago in response to the first motion for default in this case, *and,* not surprisingly, was filed six days late.[7] That filing clearly does not serve to toll the deadline triggered when the Sixth Circuit returned their ruling back in July of 2025, and does not support the Defense's position that they are "active aggressive litigants." (J. Spragens. March 18, 2026, hearing).

Moreover, in the face of Motions for Default and for Default Judgment filed two months before trial, Defendants waited seven weeks to file a motion seeking leave to file their answers.

---

[7] The May 4, 2023 filing of the Defendants' motion to dismiss was six days after the agreed deadline of April 28, 2023.

(ECF 89). Defense counsel argues that the Motions for Summary Judgment, filed hours after the motions for default, constitute "otherwise defending" for purposes of Rule 55, and advise the Plaintiff of their position and defenses, citing to a case wherein the court found that the missing answer was not fatal because other defense pleadings advised the plaintiff of the defenses in the case. That is not the situation here. The answers attached to the motion for leave are the only place where the vague defense of failure to state a claim is mentioned, as well as the doctrines of waiver, equitable estoppel, and unclean hands, breach of fiduciary duty, and malpractice. The Defendants also reserve the right to amend or add defenses "as discovery proceeds." This begs the question: so, the Defendants intend to now proceed to discovery, five days before trial?

This scenario advanced by Defense counsel would, in some other instances, amount to a good faith interpretation of the law by an ignorant or inexperienced counsel or alternatively could be considered excusable neglect. See *Rashidi v. Albright*, 818 F.Supp. 1354, 1356 (D.Nev., 1993). But in the hands of an attorney with the experience of Mr. Spragens, litigating in all levels of the judiciary, it can only be calculated as a strategy to delay and hinder these proceedings.

Waiver

Defendants then urge this Court to put the onus on the Plaintiff for the failure to answer the complaint. "[T]the plaintiff here has waited until the dispositive motion deadline after the close of discovery to bring to our attention that we had failed to file an answer timely, which plaintiff says should have been filed, I believe, in July of 2025." (J. Spragens, March 18, 2026, hearing). This is a ludicrous position and one that would require Plaintiff's counsel to violate the rules of professional responsibility that govern the representation of her client.

Defense counsel goes on to state that the Plaintiff had a duty because counsel "attended a pretrial conference in September of 2025 after the answer was due and never brought to our

4

attention that there was a failure to file an answer." (J. Spragens, March 18, 2026, hearing). This argument is made to support the contention that the Plaintiff has waived their right to default because they have actively participated in this action. This is also an absurd assertion, which is why there was no authority cited for this premise. The Plaintiff should not be enjoined because he furthered litigation while the Defendants sat back and watched. In the first year of litigation, the Defendants filed exactly one motion and one Notice.[8] Their "vigorous defense," however, was missing a very important element: answers that include their defenses.

The Pioneer Factors

When determining whether a party's neglect of a deadline is excusable, courts look to the relevant circumstances surrounding the party's omission," including: [1] the danger of prejudice to the opposing party, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith*." Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498 (1993); Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 122 (2d Cir. 2005).* However, "despite the flexibility of "excusable neglect" and the existence of the four-factor test in which three of the factors usually weigh in favor of the party seeking the extension, we and other circuits have focused on the third factor: "the reason for the delay, including whether it was within the reasonable control of the movant." *Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir. 2003); quoting Pioneer,* 507 U.S. at 395.

---

[8] The Notice stated: "Mr. Keefer and Ms. Hagh will shortly file Motions to Alter, Amend, or otherwise Rescind the March 10th Order and for guidance from the United States District Court in proceeding on the same." Nothing was subsequently filed in relation to this Notice.

As for the first and second *Pioneer* factors, the prejudice to the Plaintiff and the impact on these judicial proceedings is considerable. Here we are three years after the filing of the Complaint and on the eve of trial, and the Defendants want to assert new defenses, reserve the right to add more defenses, and commence discovery. This significant shift from "eleventh hour" to "back to the drawing board" imposes a substantial prejudice upon the Plaintiff and reverses the course of these proceedings. The discovery deadline has passed, expert disclosures have been made, default and dispositive motions have been fully briefed, witnesses identified, and motions *in limine* filed. The Defendants want to unravel these proceedings back to the beginning and start over. Not only will the Plaintiff incur considerable and further costs to start all over four years into this proceeding, but the Court will also be dragged back rendering everything up to this point meaningless – a position this Court finds offensive. This move by the defense bears the stench of gamesmanship from an experienced tactician.

To add insult to injury, when explaining the reason for the delay - the third factor - Defense counsel argues that the failure to file an answer was a "technical failure" and identifies that failure as an oversight:

> Candidly, your honor, I thought that the answer had been filed long ago. And so, when the, you know, there was a two-year delay in this case, and I thought that we had gotten through all the initial proceedings in the case and have not. And so I did not revisit the issue of the answer and that I take responsibility for that. It was not a deadline that I had put on my calendar for after the stay was lifted in this case to go back and look at the initiating papers. So, if I can only represent to the court that it was an honest inadvertent oversight and that it was caused by the delay that, you know, was a result of us appealing, certainly.
> (J. Spragens, March 18, 2026, hearing)

Failure to answer a complaint is not merely a technicality. It is also not an oversight when such failure occurs in the face of two motions for default and significantly impacts the judicial process. The duty and ability to answer allegations

6

contained in a complaint is a bedrock of our judicial system. To toss it off as a technicality is offensive and insulting to this Court and these proceedings. "I forgot" is not acceptable. Neither is "I didn't think it was that important" which is exactly what counsel was inferring to this Court.  The assertion that the Plaintiff could glean the responses and the defense from the other pleadings is ridiculous. It is not the Plaintiff's job to become part of a scavenger hunt through the Defendants' pleadings and filings to ascertain what may be construed as an answer to an allegation or an affirmative defense – nor is it the Court's job. The Rules are there for just this reason: so that the parties can state their positions clearly to aid in the administration of justice. Counsel's reason for the years-long delay in filing answers is lame to the point of complete worthlessness.

The motion for leave professes the reason there were no answers filed for these Defendants is because the procedural posture of this case was so uniquely disjointed because of the appellate process (ECF 89, p2). There was nothing unique here. Appeals happen all of the time, as defense counsel is well aware.[9] This is not a novel concept to the Defendants or their counsel. The appeals that supposedly knocked them off the litigation tract and made them forget that discovery initiates after an answer is filed (a concept grasped by every first-year law student) were their own appeals. They were not surprises to the Defendants, nor was the process foreign by any means.

Finally, counsel insists that this was not a strategic move and that the Defendants will get no advantage from their "technical oversight." This is clearly a false statement. The parties here are not strangers to each other. They are adversaries on a personal and professional level. Given the Defendants' fondness for the appellate process, it is not a reach to imagine a calculated stance

---

[9] Defense counsel has filed a total of nine appeals in this bankruptcy matter, which includes the main case and two adversary proceedings.

7

that any judgment on the merits is appealable because the Defendants did not file an Answer, thereby rendering the matter unripe for final trial. Counsel stated that he prepared the Answers first when the Motion for Default Judgment was filed, but why then did he wait so long to file them? Why would he rely so heavily on the premise that courts favor resolution on the merits by waiting an inordinate amount of time to file the answers – especially if he had them prepared? The only explanation is to delay these proceedings to the frustration of the Plaintiff and this Court. No other scenario makes any sense.

Moreover, this is comedy of the absurd for anyone to believe that experienced trial counsel doesn't calendar an answer deadline, and then once he finds out that the deadline was missed, waits weeks to cure the default, and argues with a straight face it was merely a technicality. But ultimately, this is not about counsel, this is about integrity of the judicial process and the expectations of the parties appearing in this Court. A material failure of this magnitude that is amplified by the dereliction of the duty to cure immediately cannot be ignored.

This Court adopts the Sixth Circuit finding in *Toledo Hotel Investors Ltd. P'ship v. Am Contract Designers, Inc*. wherein the circuit found prejudice when the defendant and his attorney attempted the same type of behavior by preventing the scope of disputed facts and asserted defenses to be kept from the Plaintiff and the Court promoting delay and hindering the proceedings. 1991 WL 119273 (6th Cir. July 1, 1991).

United Coin Meter

The Defendants rely on the factors applied by the Sixth Circuit in determining whether to grant a default judgment:

1. Whether the plaintiff will be prejudiced;

2. Whether the defendant has a meritorious defense; and

8

3. whether the culpable conduct of the defendant led to the default.

*United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839 (6th Cir. 1983)

The first factor was discussed in the previous section and focused on the increased costs to the Plaintiff as well as the impact on the integrity of these proceedings and the judicial process. The defense urges that the second factor is easily met, and this Court does not agree. For example, the defense relies on the "law of the case" doctrine and cites to a footnote in the appellate opinion as an explicit finding by Judge Trauger. It has been this Court's experience that judge's do not hide their "explicit findings" in footnotes. The answers attached to the Motion for Leave do not appear to contain sufficient support, therefore, the Court cannot make a determination that those defenses have any merit.

As for the third factor, nothing and no one prevented the Defendants from filing their answers timely. As a matter of fact, the Defendants gleaned an additional seven months after the July 2025 deadline by Plaintiff filing their motion for default judgment in January 2026. Then they delayed another seven weeks before seeking to have their answers filed.  A seven week delay offends the spirit of *Pioneer*, and the intent of the Sixth Circuit in *Union Coin Meter*.

Conclusion

Although this Court's course of action is typically to have a complete record and adjudicate the case on the merits, in this instance it is obvious to the point of insult that the Defendants seek to take advantage of the leniency courts generally employ when a party seeks leave to overcome a default to get to the merits of a case. The Defendants made a calculated move here and that move was to thwart these proceedings. Seeking permission to file their answers at this stage of litigation, reserving the right to amend or add defenses, and requesting to

9

commence discovery on the eve of trial is a slap in the face to this Court and disrespectful to our judicial system.

Therefore, IT IS HEREBY ORDERED that

(1) Defendants' Motion for Leave to File Answers Instanter (ECF 89) is DENIED as the failure to file answers for Defendants Bretton Keefer and Afsoon Hagh was not excusable neglect, but an attempt to derail these proceedings.

(2) Plaintiff's Motion for Entry of Default Against Defendants Bretton Keefer and Afsoon Hagh (ECF 49) is GRANTED.

(3) Plaintiff's Motion for Default Judgment Against Defendants Bretton Keefer and Afsoon Hagh (ECF54) is GRANTED, because all allegations are deemed admitted by Defendants Bretton Keefer and Afsoon Hagh for failure to answer those allegations, as well as the waiver of affirmative defenses for failure to plead. Entry of Judgment is deferred pending determination of this Court as to the division of the subject funds.

(4) An evidentiary hearing will be held on March 25, 2026, at 11:00 am, Courtroom 2, 701 Broadway, Nashville, Tennessee. The hearing is limited to presentation of evidence regarding the amount of fees to be awarded. Any party asserting a right and interest in the subject fees are to appear in person and file exhibit and witness lists no later than 12:00 noon on March 24, 2026.

*THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE*

10