# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **IN RE:** | **Case No. 3:19-bk-07235** |
| | **Chapter 7** |
| **CUMMINGS MANOOKIAN, PLLC** | **Judge Walker** |
| Debtor. | **Adv. Proc. No. 3:23-ap-90036** |
| **BRIAN CUMMINGS,** | |
| Plaintiff, | |
| **v.** | |
| **BRETTON KEEFER, JEANNE BURTON, and AFSOON HAGH** | |
| Defendants. | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S AND TRUSTEE'S JOINT MOTION TO APPROVE COMPROMISE AND SETTLEMENT

### INTRODUCTION: AN UNCONSTITUTIONAL SEIZURE MASQUERADING AS A "SETTLEMENT"

The "Joint Motion to Approve Compromise and Settlement" filed by Plaintiff Brian Cummings and Defendant Jeanne Ann Burton, Chapter 7 Trustee for Cummings Manookian, PLC, is a bad-faith procedural fiction, an unconstitutional seizure of non-party property, and a mathematical fraud perpetrated upon this tribunal.

Case 3:23-ap-90036   Doc 111   Filed 04/01/26   Entered 04/01/26 21:56:33   Desc Main
Document    Page 1 of 23

The moving parties ask this Court to rubber-stamp a manufactured agreement that blatantly circumvents jurisdictional limits, ignores indispensable corporate parties, and deliberately conceals a mathematical impossibility designed to evade statutory fee caps and ethical rules. The Joint Motion must be denied in its entirety.

The core absurdity of the Joint Motion lies in its true, unstated objective: an unconstitutional "fourth-party" seizure. The moving parties are not merely settling claims between themselves. Rather, they are demanding that this Court issue a mandatory, blind turnover order against a non-party law firm — Bass, Berry & Sims — to confiscate the contents of a fourth party's (Hagh Law) client escrow account.

To order the distribution of these fourth-party funds, held by a non-party, based on a private agreement between two adversarial claimants violates the most fundamental tenets of due process and exceeds the jurisdictional scope of Federal Rule of Bankruptcy Procedure 9019.

To facilitate this seizure, the Plaintiff and the Trustee plainly misconstrue the Court's recent entry of an interlocutory default against the individual Defendants, Afsoon Hagh and Bretton Keefer, to argue that the targeted funds are now "unclaimed." Their argument fundamentally misunderstands the legal effect of a default judgment and exposes their proposed settlement as a procedural sham. A default judgment against an individual does not extinguish the property rights of a separate, unjoined corporate entity.

2

The Trustee's participation in this Joint Motion is rooted in obvious bad faith. The Trustee represents to this Court, under penalty of perjury, that "[n]o other person or entity has made any claim in this matter to the fees at issue." The Trustee must be aware that this statement is false. The actual owner of the targeted funds, Hagh Law, PLLC, is not a party to this proposed "settlement." The Trustee knows this because the Trustee explicitly sued Hagh Law, PLLC over these exact same funds in a companion lawsuit, Adversary Proceeding No. 20-ap-90002. To pretend there is not active litigation *by the Trustee* against the corporate owner of the funds, and at the same time ask the Court to seize those very funds as unclaimed, is to commit a fraud upon the tribunal.

Finally, the proposed 80/20 split of the escrowed funds constitutes a mathematical fraud. Based on the Plaintiff's own sworn testimony in 2021, the Trustee's maximum *quantum meruit* claim is capped at $10,000. The moving parties assert that the Trustee is entitled to 20 percent of the total pool and Plaintiff is entitled to the remaining 80 percent. Thus, the total settlement pool is mathematically capped at a gross total of $50,000.

To get around this sworn mathematical reality, they ask the Court to blindly authorize a blank check, permitting them to apply their 80/20 formula to a client trust account of undisclosed size in direct violation of Tennessee's strict statutory medical malpractice fee caps (Tenn. Code Ann. § 29-26-120) and ethical rules regarding fee splitting.

For the extensive factual and legal reasons set forth below, the Joint Motion is procedurally void, mathematically impossible, and constitutionally impermissible.

**LAW AND ARGUMENT**

**I. THE COURT LACKS JURISDICTION TO SEIZE A NON-PARTY'S ACCOUNT (THE "FOURTH-PARTY" SEIZURE)**

**A. Rule 9019 Cannot Authorize a Backdoor Writ of Attachment Against a Non-Party**

The Court lacks both the subject matter jurisdiction and the equitable authority to execute the "fourth-party" seizure requested in the Joint Motion. Federal bankruptcy courts possess broad equitable powers, but a settlement under Federal Rule of Bankruptcy Procedure 9019 cannot be utilized as a backdoor writ of attachment or writ of possession against a non-party's client trust account. A writ of possession is a stringent judicial order directing the physical seizure of specified property from a defendant's possession, while a writ of attachment is utilized to seize and hold assets prior to a judgment. Both are powerful, drastic remedies that demand strict procedural and evidentiary safeguards before they can be deployed against a party's property.

The moving parties are attempting to bypass these mandatory safeguards to target a bank account held by a third party (Bass, Berry & Sims, PLC) on behalf of an unjoined non-party (Hagh Law, PLLC). The United States Supreme Court made clear in *Connecticut v. Doehr*, 501 U.S. 1 (1991), that a prejudgment attachment or

seizure of property in this manner violates the Due Process Clause of the Fourteenth Amendment.

Furthermore, the Sixth Circuit has recently reaffirmed that extinguishing a property owner's equitable interest without affording them a proper mechanism to defend their rights constitutes an unconstitutional taking. The moving parties are asking this Court to commit a plain due process violation by issuing a blind turnover order against a non-party's escrowed funds, depriving Hagh Law, PLLC, of all constitutional protection. As the United States Supreme Court has expressly warned, "parties who choose to resolve litigation through settlement may not dispose of the claims of a third party... without that party's agreement." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 529 (1986) (quoted with approval in *Martin v. Wilks*, 490 U.S. 755 (1989)).

**B.** **The Court's Affirmative Obligation Under the TMT Trailer Ferry Standard**

The bedrock rule governing bankruptcy settlements in the Sixth Circuit is derived from the United States Supreme Court's mandate in *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968). Under the *TMT Trailer Ferry* standard, a bankruptcy court cannot blindly approve a settlement; it is charged with an "affirmative obligation to apprise itself of all facts necessary to evaluate the settlement and make an informed and independent judgment as to whether the compromise is fair and equitable."

The Sixth Circuit has strictly reinforced this standard, holding in *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988) that to meet this burden, the court must weigh the conflicting interests of all relevant parties, "considering such factors as the probability of success on the merits, the complexity and expense of litigation, and the reasonable views of creditors." Crucially, a Rule 9019 motion governs the compromise of claims belonging to the bankruptcy estate; it does not independently confer jurisdiction to issue a turnover order against a non-party institution holding disputed funds in escrow. Due process requires that an order depriving a party — even an escrow agent — of property be preceded by an actual lawsuit (which Mr. Cummings chose not to bring against Hagh Law), the establishment of subject matter jurisdiction over the res, and an evidentiary basis for the seizure.

**C.     The Absence of Factual Predicates Justifying Seizure**

Applying these rules to the present facts demonstrates a void of any factual predicates necessary to justify the seizure of the Bass, Berry & Sims trust account. The Joint Motion asks the Court to order Bass, Berry & Sims to "distribute the amounts set forth above" and issue checks directly to the Plaintiff and the Trustee. However, the Joint Motion fails to establish a single factual predicate necessary to justify seizing this specific account.

The Joint Motion's evidentiary defects on jurisdiction are plain:

- **No proof of ownership:** The motion fails to provide any evidentiary record establishing that the funds held by Bass, Berry & Sims are the exclusive property of the bankruptcy estate, the Plaintiff, or any other party to this matter; as opposed to a non-party.

- **No proof of balance:** The motion intentionally obscures the actual dollar amount held in the trust account, making it impossible for the Court to determine the scope of the seizure.

- **No jurisdiction over the non-party:** Bass, Berry & Sims is not a party to this adversary proceeding; nor is it the owner of the account and funds of Hagh Law, PLLC.

- **No adjudication of competing liens:** The motion claims that the funds are held "subject to the liens of Plaintiff and Trustee," yet provides no documentation, perfection records, or priority analysis of these alleged liens.

## D. The Settlement is a Manufactured Transaction Devoid of Substantive Claims

A federal court cannot issue a blind turnover order against a law firm's client trust account without an evidentiary record. Rule 9019 is not a backdoor writ of attachment. The movants' proposed "settlement" is a manufactured transaction designed to bypass these exact jurisdictional hurdles.

An examination of the Plaintiff's Amended Complaint reveals that it seeks no substantive monetary damages from the Trustee, Jeanne Burton. The Amended Complaint merely names the Trustee as a "proper party" because the monetary value of the attorney work performed by Cummings Manookian makes it a "concern / asset of the Cummings Manookian bankruptcy proceeding." Because the Plaintiff has no affirmative claim for monetary damages against the Trustee, there is nothing of substance to "settle" between them. The agreement to split the funds 80/20 is not a compromise of a disputed liability; it is a collusive arrangement to divide the spoils of a non-party's escrow account without subjecting their claims to adversarial testing.

Because Rule 9019 does not permit such, because Mr. Cummings chose not to sue Hagh Law, PLLC, and because the moving parties have failed to establish the necessary jurisdictional and factual predicates to seize the Bass, Berry & Sims trust account, the Joint Motion is a manufactured transaction that must be denied.

If the Trustee wishes to compel the turnover of property held by a non-party, she must initiate an adversary proceeding under Rule 7001(1). If the Plaintiff wishes to execute on a judgment, he must utilize Rule 69. Rule 9019 merely authorizes a trustee to compromise the estate's claims; it does not magically confer jurisdiction to bypass the Federal Rules of Civil Procedure and seize a fourth party's bank account.

## II. PLAINTIFF CANNOT USE HIS PLEADING DEFECTS AND AN INDIVIDUAL DEFAULT TO SEIZE CORPORATE PROPERTY

### A. The Supreme Court's Prohibition on Binding Non-Parties

The Plaintiff and the Trustee are colluding to use an interlocutory default against an individual defendant in Lawsuit A (this adversary proceeding) to attempt to seize corporate funds that are the subject of an active trial in Lawsuit B (the Trustee's adversary proceeding). In addition to being flatly unconstitutional, this maneuver violates fundamental principles of corporate separateness and the Supreme Court's mandate regarding mandatory joinder.

The rule governing the binding effect of judgments on non-parties was definitively articulated by the United States Supreme Court in *Martin v. Wilks*, 490 U.S. 755 (1989). In *Martin*, the Supreme Court affirmed the deep-rooted historic tradition that everyone should have their own day in court. The Court held that "one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." As the Supreme Court explicitly held regarding sham settlements, a voluntary settlement "cannot possibly 'settle,' voluntarily or otherwise, the conflicting claims of another group ... who do not join in the agreement." *Martin v. Wilks*, 490 U.S. 755, 768 (1989).

### B. The Plaintiff Bore the Burden of Joinder Under Rule 19

Crucially, the Supreme Court expressly rejected the concept of mandatory intervention. The Court held that a party seeking a judgment binding on another

cannot obligate that person to intervene; rather, the burden is strictly on the plaintiff to join the indispensable party under Federal Rule of Civil Procedure 19.

As the Court noted, "[j]oinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court". Furthermore, under the Tennessee Revised Limited Liability Company Act (Tenn. Code Ann. § 48-249-114), an LLC is a distinct legal entity, and its members are shielded from personal liability for the debts, obligations, and liabilities of the LLC.

## C.     Corporate Separateness Shields Hagh Law, PLLC

The Plaintiff in this action was the master of his (once-amended) complaint. When drafting the Amended Complaint, Brian Cummings made the deliberate pleading decision to add and sue Afsoon Hagh in her individual capacity. He entirely failed to join the actual law firm of record in the underlying *Shoemaker* matter — Hagh Law, PLLC — as an indispensable party under Rule 19 despite having actual knowledge of, and indeed possession of, the engagement agreement between the client and Hagh Law, PLLC.

Hagh Law, PLLC is a professional limited liability company organized under the laws of Tennessee, and it is a separate legal entity distinct from its individual members. The 2021 Engagement Agreement for the *Shoemaker* settlement was explicitly executed between the client and "Hagh Law, PLLC," establishing privity with the corporate entity, not Ms. Hagh individually. The funds held in escrow by Bass, Berry & Sims are the corporate property of Hagh Law, PLLC.

**D. An Individual Default Cannot Act as a Veil-Piercing Mechanism**

Plaintiff and the Trustee are colluding to attempt to bypass this corporate liability shield. They ask the Court to seize the corporate property of Hagh Law, PLLC. Under *Martin v. Wilks*, Hagh Law, PLLC had no affirmative duty to intervene in the Plaintiff's defectively drafted lawsuit to protect its property. The burden was entirely on the Plaintiff to join the corporation. He failed to do so <u>for years</u>. The remedy for failing to join an indispensable party under Rule 19 is never to award the plaintiff the missing party's property by default.

Because a default judgment against an individual cannot pierce the corporate veil to seize the assets of a non-party LLC, and because the Supreme Court prohibits forcing a non-party to intervene to protect its rights, the proposed settlement relies on a legal impossibility <u>born of the Plaintiff's own refusal to join the indispensable party</u>. The Plaintiff cannot use his own pleading defects to seize corporate property.

**III. THE TRUSTEE'S BAD FAITH AND "NO OTHER CLAIMS" PERJURY ARE AN ACTUAL FRAUD UPON THE COURT**

**A. The Trustee's Absolute Duty of Candor to the Tribunal**

The Joint Motion must be denied because it is predicated on a demonstrably false representation made by the Chapter 7 Trustee to this Court. The Trustee's assertion that the funds are unclaimed by any other entity is an absurdity that directly contradicts the Trustee's own active litigation docket.

Case 3:23-ap-90036   Doc 111   Filed 04/01/26   Entered 04/01/26 21:56:33   Desc Main
Document     Page 11 of 23

Under the equitable standards governing bankruptcy proceedings and the inherent power of the federal courts, a Chapter 7 Trustee owes an absolute duty of candor to the tribunal. A settlement proposed under Rule 9019 cannot be approved if it is procured through misrepresentation, bad faith, or the concealment of material facts.

## B. The False Representation that the Funds are Unclaimed

In the Joint Motion, the Trustee brazenly represents to this Court, under penalty of perjury, that the targeted funds are free and clear of any competing claims. The Trustee's filing explicitly states:

- "No other person or entity has made any claim in this matter to the fees at issue."

- "No other person or entity has asked this Court to allocate any portion of the fees to them when it issues its ruling in this matter."

These statements are staggering falsehoods. The Trustee is fully aware that Hagh Law, PLLC claims the funds, because the Trustee filed a completely independent lawsuit in an attempt to claw back these exact same fees from Hagh Law, PLLC. In Adversary Proceeding No. 20-ap-90002, the Trustee explicitly named Hagh Law, PLLC as a defendant. The contradiction is an affront to the integrity of this Court. The Trustee cannot simultaneously prosecute a claw-back action against Hagh Law, PLLC for the Keefer settlement fees in one adversary proceeding, while representing to the Court in this adversary proceeding that no other entity has made a claim to those exact same fees.

### C. Concealment of the Active Trial Against Hagh Law, PLLC

The Trustee took Hagh Law, PLLC <u>to trial</u> over these exact funds on December 9, 2025. As the Joint Motion admits: "On December 9, 2025, the Court conducted a trial on the AP." An individual default against Afsoon Hagh for a pleading defect by Plaintiff Brian Cummings in this secondary lawsuit does not erase Hagh Law, PLLC's corporate claim, nor does it erase the fact that a trial on the merits regarding the ownership of these funds occurred mere months ago.

By falsely certifying that the funds are unclaimed, the Trustee is attempting to manufacture a procedural vacuum in which the Court might blindly approve the 80/20 split. This bad-faith procedural fiction is an attempted fraud upon the tribunal that disqualifies the settlement from approval under any equitable standard.

### IV. THE SETTLEMENT IS PROCEDURALLY VOID DUE TO ASYMMETRICAL DEFAULT ENFORCEMENT AND FORFEITURE

### A. Due Process and Asymmetrical Default Enforcement

The proposed settlement is procedurally void because it relies on the asymmetrical enforcement of default rules, rewarding the Trustee for the exact same pleading defect for which the individual Defendants were punished. Furthermore, even if the default stands (which is unlikely on appeal), the Plaintiff's underlying contract limits his recovery to zero dollars in contingency fees due to his voluntary withdrawal.

Due process requires the evenhanded application of procedural rules. In the Sixth Circuit, default judgments are governed by the strict standards set forth in *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839 (6th Cir. 1983). Under the *United Coin Meter* test, a court must evaluate the culpable conduct of the defaulting party. While district courts possess some discretion under Federal Rule of Civil Procedure 55 to enter default judgments, that discretion cannot be exercised in a fundamentally asymmetrical manner that prejudices one co-defendant while enriching another who is equally culpable.

**B.    The Trustee's Uncured Default and Culpable Conduct**

The discrepancy in the conduct of the parties and the enforcement of Rule 55 by the Bankruptcy Court renders this purported settlement void. On March 19, 2026, the Court entered an "Order Granting Motion for Default Judgment," defaulting Defendants Afsoon Hagh and Bretton Keefer for failing to file an Answer to the Amended Complaint.

The Court severely criticized the individuals and their counsel, characterizing their delay as a "calculated strategy" and "gamesmanship." Yet the record reflects that Defendant Jeanne Burton (the Trustee) also has an uncured default. The Trustee never filed an Answer to the Plaintiff's Amended Complaint.

The discrepancy in conduct and consequence is striking: while Defendants Hagh and Keefer proactively filed a Motion for Leave to File Answers Instanter to cure their defect, the Trustee did absolutely nothing to cure her own default. Instead of answering the allegations, the Trustee privately negotiated this

purported settlement. The Trustee engaged in entirely culpable conduct under *United Coin Meter* by completely ignoring her duty to answer, yet she now seeks to be rewarded via a collusive settlement. Approving this settlement would require the Court to rule that Rule 55 applies strictly and punitively to Hagh and Keefer but does not apply at all to the Trustee. This is reversible, asymmetrical enforcement.

## C.    **Contractual Forfeiture Under Tennessee Law**

Substantively, under Tennessee contract law, unambiguous termination clauses in attorney-client agreements are strictly enforced. Where a contract expressly dictates the financial consequences of an attorney's voluntary withdrawal, the attorney is bound by the four corners of that agreement. An attorney who voluntarily withdraws without cause, and whose contract explicitly limits recovery upon withdrawal to advanced expenses, forfeits the right to a quantum meruit recovery of the contingency fee. The Tennessee Supreme Court ruled in *White v. McBride*, 937 S.W.2d 796 (Tenn. 1996), that attorneys who attempt to collect clearly excessive fees forfeit their right to recover under a contingency contract and may be denied quantum meruit entirely.

## D. Plaintiff's Voluntary Withdrawal Limits Recovery to Advanced Costs

Substantively, the Plaintiff's claim to any portion of the contingency fee is barred by contractual forfeiture. While a default judgment establishes liability on the well-pleaded facts, it does not rewrite the underlying contract to manufacture damages that do not exist. The relationship between the Plaintiff and the client

was governed by the 2017 Shoemaker Engagement Agreement, drafted by the Plaintiff.

The contract contains a specific, unambiguous provision governing voluntary withdrawal:

- "We may choose to withdraw from representing you... A 'withdrawal' by this firm does not relieve you of the responsibility to pay advanced costs."

The consequences of that clause – default or proposed settlement considered – are absolute:

- The Plaintiff's own Amended Complaint admits he voluntarily withdrew from the representation on October 2, 2020—a full year before the case settled.

- He cited "strained" relationships and "personal conflict." He was not discharged by the client.

- Under the canon of *expressio unius est exclusio alterius*, the contract's explicit limitation of recovery upon withdrawal to "advanced costs" extinguishes any right to a contingency fee.

- The Plaintiff has already admitted in his pleadings that he received his advanced costs.

Because the Trustee is in uncured default, and because the Plaintiff's underlying contract limits his fee recovery to zero, the proposed 80/20 settlement is a legal impossibility that cannot be approved.

**V.     THE PLAINTIFF AND THE TRUSTEE HAVE JUDICIALLY CAPPED THEIR OWN SETTLEMENT AT $50,000, NOT THE ENTIRE UNSPECIFIED CONTENTS OF A TRUST ACCOUNT**

**A.     Tennessee Law Strictly Caps Quantum Meruit and Contingency Recoveries**

The Joint Motion contains a devastating mathematical trap.  By the Plaintiff's own sworn testimony, he has judicially capped the total value of this settlement at $50,000.  Mr. Cummings submitted a sworn Declaration in the underlying *Shoemaker* case **(Exhibit 1)** testifying that the maximum value of his work on the case for the Trustee was $10,000.  The Trustee has since stated in pleadings that Brian Cummings is her sole witness as to the value of the work the Trustee should be awarded.

Thus, any attempt to apply the proposed 80/20 split to a pool of funds larger than $50,000 constitutes not only fraud but a severe violation of Tennessee ethical rules and statutory fee caps.

Under Tennessee law, an attorney recovering under *quantum meruit* is strictly limited to the reasonable value of the actual services rendered based on time, labor, and customary local rates. Furthermore, Tennessee Rules of Professional Conduct (TN RPC) 1.5(e) mandates that a division of a fee between lawyers who are not in the same firm may be made only if "the division is in

17

proportion to the services performed by each lawyer." Finally, Tenn. Code Ann. § 29-26-120 strictly caps attorney's fees in medical malpractice and health care liability actions at thirty-three and one-third percent (33.33%) of all damages awarded to the claimant, and requires the court to determine the fee "on the basis of time and effort devoted to the litigation."

A fee division that awards hundreds of thousands of dollars for a nominal amount of hourly work is an illegal, excessive fee that violates both statutory mandates and ethical strictures.

## B. The Plaintiff's Sworn Declaration Establishes a $10,000 Ceiling

On November 3, 2021, Plaintiff Brian Cummings executed a Sworn Declaration under penalty of perjury to establish the value of the work performed by the Debtor law firm, Cummings Manookian, PLC. In that Declaration, the Plaintiff established a strict, unyielding ceiling on the *quantum meruit* value of the firm's pre-dissolution work. He swore to the following facts:

- "I estimate that I spent approximately 20 hours of time performing the above-mentioned work with approximately 12-14 hours of that total involving my review of the Vanderbilt medical records."

- "I believe a reasonable fee for an hour for my time in 2018 was $400-500/hour."

The mathematics of this sworn testimony dictate a hard cap: 20 hours multiplied by a maximum rate of $500 per hour equals exactly **$10,000**. By the Plaintiff's

own sworn testimony, the maximum *quantum meruit* value of the Debtor firm's work is $10,000.

## C. The 80/20 Formula Mathematically Caps the Settlement Pool at $50,000

The Joint Motion now asks this Court to approve a settlement where the bankruptcy estate (representing the work of the Debtor law firm) receives exactly 20% of the remaining Keefer settlement fees, and the Plaintiff receives the remaining 80%. The Trustee explicitly bases this 20% figure on the Plaintiff's testimony regarding the value of the Debtor's pre-filing work.

The formula exposes the fraud. If the value of the Debtor's 20% share is dictated by the Plaintiff's sworn $10,000 ceiling, then the total pool of funds being divided is strictly and mathematically capped at $50,000.

- Trustee's 20% Share = $10,000 (Based on sworn 20 hours at $500/hr)
- Plaintiff's 80% Share = $40,000
- **Total Allowed Settlement Pool = $50,000**

## D. Applying the Split to the Entire Escrow is an Illegal, Excessive Fee

The Plaintiff and the Trustee are attempting a bait-and-switch. They use the $10,000 valuation to justify a 20% allocation, but they secretly intend to apply that 80/20 percentage split to the entirety of the escrow account held at Bass, Berry & Sims.

If the escrow account holds $1,000,000, for example, applying the 80/20 split would award the Trustee $200,000. But the Plaintiff already swore under

penalty of perjury that the firm's work was only worth $10,000. Awarding $200,000 for work sworn to be worth $10,000 violently breaches the proportionality requirement of TN RPC 1.5(e) and obliterates the limits of *quantum meruit*. A party cannot recover hundreds of thousands of dollars for work they explicitly swore was worth exactly $10,000.

Because the moving parties have judicially capped their own settlement at $50,000 through sworn testimony, any attempt to extract a larger sum from the escrow account amounts to fraudulence. The settlement violates Tennessee ethical rules and statutory fee caps and cannot be approved.

## VI. THE MOTION ASKS THE COURT TO BLINDLY AUTHORIZE A "BLANK CHECK" TO CONCEAL THIS EXACT FRAUD

### A. The Court's Affirmative Duty to Estimate Claims and Values

The moving parties intentionally drafted the Joint Motion to conceal the mathematical exploit outlined above. By hiding the actual dollar amounts of the settlement, they are asking the Court to authorize a "blank check," effectively stripping the Court of its ability to perform its mandatory judicial review.

As established by the Sixth Circuit in interpreting the *TMT Trailer Ferry* standard, a bankruptcy court cannot approve a Rule 9019 settlement without apprising itself of all facts necessary to make an informed and independent judgment.

### B. The Intentional Concealment of Settlement Figures Strips Judicial Review

The Joint Motion deliberately conceals the fraudulent payoff to bypass these mandatory judicial reviews. Nowhere in the Joint Motion or the proposed Order do the parties disclose the total dollar amount of the underlying Keefer settlement (nor can they because Mr. Cummings chose to take no discovery on that issue in this case, nor is it in the evidentiary record in this matter). Nowhere do they disclose the total dollar amount held in the Bass, Berry & Sims escrow account (this is also nowhere in the now-closed evidentiary record in this matter, once again because Mr. Cummings chose to take exactly zero discovery in this case).

Nowhere do they disclose the specific dollar figures that constitute the 80% and 20% payouts; intentionally keeping the true financial impact of the settlement off the public record and away from the Court's immediate scrutiny.

This concealment makes it impossible for the Court to fulfill its duties and requires summary rejection of the joint proposed settlement. A court cannot execute its affirmative obligation under *Reynolds* if the parties intentionally hide, or affirmatively fail to place in the record, the settlement figures. The Court cannot evaluate whether the 80/20 split is "fair and equitable" under Rule 9019 without knowing how much money is actually changing hands—nor is it this Court's obligation or privilege under the party presentation rule to fix an evidentiary void of Plaintiff's own making.

A federal court cannot sign a blank check to facilitate the evasion of state statutory fee caps and bankruptcy standards. The Joint Motion's obfuscation of the financial data renders it legally deficient on its face.

<u>**CONCLUSION**</u>

The Joint Motion to Approve Compromise and Settlement constitutes procedural abuse and, unfortunately, deception. The Plaintiff and the Trustee have colluded to execute an unconstitutional "fourth-party" seizure of a non-party law firm's trust account. The Trustee has misrepresented that "[n]o other person or entity has made any claim," concealing the December 9, 2025 trial against the true corporate owner of the funds, Hagh Law, PLLC.

Finally, the parties have attempted to present the Court with a "blank check" settlement to obscure a mathematical problem: the Plaintiff's own sworn testimony caps his *quantum meruit* value at exactly $10,000, rendering any attempt to split an undisclosed sum in an escrow account an impossible mathematical fraud situation that violates Tennessee's statutory fee caps and ethical rules.

**WHEREFORE**, Defendants respectfully request that this Honorable Court:

1. **DENY** the Plaintiff's and Trustee's Joint Motion to Approve Compromise and Settlement in its entirety;

2. **DISMISS** the underlying Amended Complaint against Defendants Bretton Keefer and Afsoon Hagh with prejudice based on the Plaintiff's judicial admissions that he is making no claims against them;

3. Refuse to enter any turnover order against the non-party trust account held by Bass, Berry & Sims; and

4. Grant such other and further relief as the Court deems just and proper.

Date: April 1, 2026

Respectfully submitted,

*/s/ John Spragens*
John Spragens (TN Bar No. 31445)
Spragens Law PLC
915 Rep. John Lewis Way S., Suite 100,
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Bretton Keefer and Afsoon Hagh*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was filed April 1, 2026 and served electronically upon all parties in interest or their counsel as indicated on the receipt issued by the Court's electronic filing system.

*/s/ John Spragens*

23