IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MANOOKIAN PLLC and BRIAN MANOOKIAN, <br><br> Appellants, <br><br> v. <br><br> JEANNE ANN BURTON, TRUSTEE, <br><br> Appellee. | Case No. 3:22-cv-00474 <br> Bankr. Case No. 3:19-bk-07235 <br> Adv. Pro. No. 3:20-ap-90002 <br><br> Judge Aleta A. Trauger |

**MEMORANDUM and ORDER**

Before the Court is the Notice of Appeal filed by defendants/appellants Brian Manookian and Manookian PLLC. (Adv. Pro. No. 185; Doc. No. 1.)[1] The appellants have filed a Statement of Issues, supporting Brief, and the record pertaining to their appeal. (Doc. Nos. 4, 5, 5-1.) The plaintiff/appellee, Trustee Jeanne Ann Burton, has filed a responding Brief (Doc. No. 6), and the appellants filed a Reply (Doc. No. 7). The court finds that a hearing on this matter is unnecessary and, therefore, **DENIES** the appellants' request for oral argument. For the reasons that follow, defendants/appellants' Notice of Appeal, which the court construes as a motion for leave to appeal, is **DENIED**.

---

[1] Citations to "Doc. No." refer to the docket number of filings made in the case in this court. Citations to "Bankr. No." are to the lead bankruptcy court docket in the underlying bankruptcy case, *In re Cummings Manookian, PLLC*, Case No. 3:19-bk-07235 (Bankr. M.D. Tenn.). Citations to "Adv. Pro. No." are to filings in the subject adversary proceeding, *Burton v. Hagh Law PLLC et al.*, Adv. Pro. No. 3:20-ap-90002 (Bankr. M.D. Tenn.).

2

I. BACKGROUND

On November 6, 2019, Cummings Manookian, PLC[2] filed a Chapter 7 Voluntary Petition in the Bankruptcy Court, which was assigned to Bankruptcy Court Judge Charles M. Walker. (Bankr. No. 1.) Trustee Jeanne Ann Burton was appointed to serve as the Chapter 7 Trustee for the debtor on the same day and continues to serve in that capacity.

On January 8, 2020, the Trustee filed the Adversary Proceeding against Hagh Law PLLC ("Hagh Law"), Afsoon Hagh, Manookian PLLC ("Manookian Law"), and First-Citizens Bank and Trust Company (the "Bank"), asserting claims for conversion, fraudulent transfer, tortious interference with contract, successor liability/alter ego, and turnover, and seeking a declaratory judgment, injunctive relief, and other related relief. (Adv. Pro. No. 1, at 1.)[3] What followed was a contentious eighteen months or so of discovery, culminating in a hearing on March 17, 2022 ("March 17 hearing") before Judge Walker, for the purpose of resolving a number of outstanding discovery disputes.

The court and the parties were able to resolve several matters during the first half of the March 17 hearing. (*See generally* Mar. 17, 2022 Hr'g Tr., Adv. Pro. No. 140.) The court then adjourned for several hours while the parties continued to work toward further resolution on their own. When court reconvened on the afternoon of March 17, the parties reported to the judge the progress they had made and areas in which they had reached an impasse. One of the remaining areas of conflict was where to conduct four depositions the parties agreed should be taken. (Adv.

---

[2] The debtor's correct name is apparently Cummings Manookian, PLC. It was named incorrectly as Cummings Manookian, PLLC in the Petition.

[3] After the Bank turned over $715,000 (representing disputed fees in a case in which the debtor had represented one of the parties) being held by the Bank to the Clerk of Court, pursuant to the Bankruptcy Court's Order, the Trustee dismissed the Complaint as to the Bank on January 28, 2020.

Case 3:20-ap-90004 Doc 208 Filed 02/16/23 Entered 02/16/23 10:25:40 Desc Main Document Page 2 of 12

Pro. No. 140, at 81–82.) The Trustee had suggested that the depositions take place in the courthouse, a proposal Judge Walker immediately approved. Counsel for Brian Manookian and Manookian Law registered his objection, and the court observed that, while the parties still had the ability to agree on a location, in the absence of an agreement, they would have to hold a hearing. (*Id.* at 82.) Counsel for the appellants continued to express the reasons why he believed that holding the depositions at the courthouse would be inconvenient for all concerned. He noted in particular that parking at the courthouse was expensive and that he did not understand the basis for departing from the ordinary course of holding depositions at lawyers' offices. The court then asked counsel for the Trustee to articulate a basis for conducting the depositions at the courthouse. Counsel for the Trustee stated several reasons why he believed the depositions should be taken at the courthouse, including his belief that there was, as he explained it, "a security issue here. There's already been a restraining order put down against Mr. Manookian by one of the creditor's lawyers in this case, and I don't take that lightly on behalf of my client." (*Id.* at 83.)

Counsel for the appellants again posited that his office was "just down the street" and offered free parking, and he objected to the suggestion of a security issue "in this ordinary bankruptcy case involving professional lawyers on all sides." (*Id.* at 84.) At this point, the court asked counsel for the Trustee if he was "uncomfortable doing depositions" in the appellants' counsel's office. (*Id.*) Counsel for the Trustee stated that he was. The court then made the following statement:

> All right. And then I'll just address the 100-pound gorilla in the room on that issue.
>
> To be candid, Mr. Spragens, I mean, your client's past behavior before the tribunals, and I've had at least two lawyers call the Court and say they don't feel comfortable if your client is going to appear, and, you know, the Court takes those concerns very seriously and makes no conclusion on whether they are valid, they are perceptions which drive behaviors of other parties. And to eliminate any of those perceptions, and to protect everyone against any allegations of bad behavior, misbehavior, or perceived misbehavior, it makes sense to do them here in an

> environment where no one can get your client further down a rabbit hole of he did this or he did that, that we're in a neutral environment, which affords certain protections. And if nothing else, in terms of everybody's on their best behavior.
>
> And so the Court's going to make that determination, that the depositions, unless the parties can agree, will be held here in the courthouse.

(*Id.* at 84–85.) No further discussion on this topic ensued, and counsel did not object contemporaneously to the court's statement regarding his "client's past behavior" or the two phone calls to the court by unidentified lawyers.

However, on May 5, 2022, Brian Manookian and Manookian Law, through counsel, filed their Motion to Disqualify Bankruptcy Judge Charles Walker, on the basis that the judge had "engaged in multiple prohibited *ex parte* communications about Brian Manookian and this proceeding . . . while this action has been pending." (Adv. Pro. No. 161, at 1–2.) In addition to the "communications with at least two [unidentified] lawyers" referenced by the judge at the March 17 hearing, the appellants represented that they had learned during the deposition of Phillip Young[4] that the Trustee, "through her Special Counsel, has had at least one improper *ex parte* communication with the Court about Mr. Manookian." (*Id.* at 1–2 n.2 (citing Adv. Pro. No. 161-2, Young Dep. 43–45).)[5] The Bankruptcy Court scheduled a hearing on the Motion to Disqualify

---

[4] Phillip Young functioned as receiver in a state court action filed in Williamson County, before being retained as counsel for the Trustee in Cummings Manookian's Chapter 7 bankruptcy proceeding. In that capacity, he was identified by the Trustee as a fact witness in the Adversary Proceeding. (*See* Adv. Pro. No. 140, at 69, 85.)

[5] As relevant here, Young testified as follows during his deposition:

> [T]he very, very first hearing in this case, I called [Judge Walker's] courtroom deputy to alert her to the fact that a creditor's lawyer had an order of protection [against Brian Manookian]. And I didn't know how that was going to work logistically when you have a lawyer who's representing a creditor in the bankruptcy and the debtor's representatives and there was an order of protection down. And so I called to alert them to that so they would know how to handle that. But I don't know if anybody else called.

(Adv. Pro. No. 161-2, Young Dep. 44.) Specifically, he did not know if the lawyer who had obtained the order of protection had also called chambers. (*Id.*)

for June 29, 2022.[6] Counsel for Hagh Law and Afsoon Hagh filed a Response expressing their support for the Motion to Disqualify. (Adv. Pro. No. 173, at 1, 2.) The Trustee filed a Response opposing the motion and pointing out that counsel for the Trustee testified that he had had a brief conversation with the judge's courtroom deputy—not with the judge himself—and that the conversation involved a procedural question rather than substantive issues. (Adv. Pro. No. 174, at 2.) The Trustee also argued that the judge's comments at the March 17 hearing and the decision to hold depositions at the courthouse did not reflect bias but instead a desire to have the depositions conducted at the courthouse in order "to avoid any allegations of bad behavior, whether real or perceived." (*Id.* at 4.) The Trustee also objected to the appellants' characterization of the legal standards purportedly supporting disqualification.

On May 31, 2022, defendant/appellant Manookian Law noticed the deposition of Judge Walker, for the purpose of addressing "(1) Judge Walker and his staff's communications about this matter with third parties outside of court proceedings and (2) Judge Walker and his staff's investigation into this matter, the parties, or witnesses outside of the Court record."(Adv. Pro. No. 177.) Judge Walker entered an eight-page Order the next day, quashing the Notice of Deposition. (Adv. Pro. No. 178.) Manookian Law and Brian Manookian filed their Notice of Appeal and Statement of Election on June 14, 2022, specifically giving notice of their appeal to this court "from the Bankruptcy Court's June 1, 2022 Order (Doc. 178)," that is, from the Order Quashing Notice of Deposition.

At the hearing on the Motion to Disqualify, which convened as planned on June 29, 2022, Judge Walker read a statement into the record. In this statement, he expressed his conclusion that,

---

[6] The docket reflects that the parties, throughout this time period, continued to engage in discovery disputes.

in light of the appeal of the Order Quashing Notice of Deposition, the court was divested of jurisdiction over certain aspects of the case, specifically including both the Motion to Disqualify and the appellants' Motion for Summary Judgment, filed ten days after their Notice of Appeal. (Adv. Pro. No. 212, at 4; *see also* Adv. Pro. No. 188 (Motion for Summary Judgment).)

The appeal of the Order Quashing Notice of Deposition is now before the court.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 158, a district court has jurisdiction to hear a timely appeal as a matter of right from final orders or decrees issued by a bankruptcy court and, "with leave of court," from interlocutory orders. 28 U.S.C. § 158(a)(1), (a)(3). Rule 8004(a) of the Federal Rules of Bankruptcy Procedure provides that, to appeal from an interlocutory order, a party should file a motion for leave to appeal with its notice of appeal. Fed. R. Bankr. P. 8004(a)(2). At the same time, however, Rule 8004(d) allows the district court to treat a timely notice of appeal as a motion for leave to appeal.

Rule 8004(b) identifies the required elements of a motion for leave to appeal, including (1) "the facts necessary to understand the question presented"; (2) "the question itself"; (3) "the relief sought"; (4) "the reasons why leave to appeal should be granted"; and (5) "a copy of the interlocutory order." With respect to the fourth element, neither Rule 8004 nor 28 U.S.C. § 158(a) states what factors a district court should consider in deciding whether to grant a motion for leave to appeal. District courts within the Sixth Circuit have adopted the standard set forth in 28 U.S.C. § 1292(b), which deals with interlocutory appeals from district courts to courts of appeal. *In re Energy Conversion Devices, Inc.*, 638 B.R. 81, 88 (E.D. Mich. 2022) (citations omitted). Thus, a district court may permit an interlocutory appeal if (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion exists regarding the correctness of the decision; and (3) an immediate appeal may materially advance the ultimate termination of the

litigation. *Id.* (citations omitted). "It is well-established that all three statutory requirements must be met for the court to certify an appeal under § 1292(b)." *Id.* (quoting *Lang v. Crocker Park LLC*, No. 1:09 CV 1412, 2011 WL 3297865, at *5 (N.D. Ohio July 29, 2011)). Even when all three criteria are met, "district courts have 'unfettered discretion to deny certification' in light of the strong bias in federal practice against interlocutory appeals." *In re Great Atl. & Pac. Tea Co.*, 615 B.R. 717, 722 (S.D.N.Y. 2020) (citation omitted). Further, it is well established that permitting interlocutory appeals is "the exception, rather than the rule." *Energy Conversion Devices*, 638 B.R. at 89 (citing *In re Doria*, No. 09-75261, 2010 WL 2870813, at *2 (E.D. Mich. July 21, 2010)).

III. ANALYSIS

    A. The Order Quashing Subpoena Is Not a "Final Order"

In their opening Brief, the appellants contend that the court has jurisdiction over this appeal as a matter of right, under 28 U.S.C. § 158(a), because the Order Quashing Notice of Deposition is a final, appealable order. (Doc. No. 5, at 3.) Alternatively, they ask the court to consider their timely Notice of Appeal as a motion for leave to file an interlocutory appeal. (*Id.*)

"Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015)). Thus, for example, "the adjudication of a motion for relief from the automatic stay forms a discrete procedural unit within the embracive bankruptcy case. That unit yields a final, appealable order when the bankruptcy court unreservedly grants or denies relief." *Id.* Likewise, orders "denying an application for an administrative expense," "sustaining an objection to a creditor's claim," or "denying a motion under Federal Rule of Civil Procedure 60(b)" all qualify as "final orders" that are appealable as of right. *In re Murray Energy Holdings Co.*, 640 B.R. 558, 560–61 (B.A.P. 6th Cir. 2022). Courts distinguish between "discrete disputes" and "discrete issues," with only the

former being subject to immediate appeal. *In re Comdisco, Inc.*, 538 F.3d 647, 651–52 (7th Cir. 2008). "A discrete dispute is one that is essentially separable from the larger case," while "a decision or order that resolves only an issue that arises during the administration of a bankruptcy estate is too small a litigation unit to justify treatment as a final judgment." *Id.*; *see also In re Jackson Masonry, LLC*, 906 F.3d 494, 500 (6th Cir. 2018) (identifying the "appropriate 'judicial unit' for finality analysis" as a "discrete 'proceeding'" (citations omitted)), *aff'd sub nom. Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582 (2020).

The order appealed from in this case is an order quashing a deposition that was sought for the purpose of obtaining evidence in support of the appellants' Motion to Disqualify Judge Walker. Irrespective of the appellants' attempts to cast it as a final order, the bankruptcy judge stayed the case pending this appeal, finding that he was divested of jurisdiction over the Motion to Disqualify and the appellants' Motion for Summary Judgment as a result of their appeal of the Order Quashing Notice of Deposition. The appellants, thus, are not in a position to appeal the disposition of the Motion to Disqualify or the Motion for Summary Judgment, because those motions are still pending. While the Motion to Disqualify might arguably constitute a discrete dispute, the resolution of which would qualify as a final order (an issue the court does not reach here), the Order Quashing Notice of Deposition is clearly not. It is an issue arising in the context of resolving the Motion to Disqualify. The court finds, therefore, that the Order Quashing Notice of Deposition is an interlocutory order, not a final order as contemplated by 28 U.S.C. § 158(a).

B.     **Whether to Grant Leave to Appeal**

As set forth above, the court may permit an interlocutory appeal if (1) the order in question involves a controlling question of law; (2) a substantial ground for difference of opinion exists regarding the correctness of the decision; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *Energy Conversion Devices*, 638 B.R. at 88.

The appellants' argument in support of an interlocutory appeal glosses over the nature of the order they seek to appeal. Thus, for instance, they argue that their appeal "involves a controlling question of law, because the "[d]isqualification of a judge . . . is governed by statute," which creates an objective standard. (Doc. No. 5, at 9.) They argue that the bankruptcy judge "refused to apply the objective standard or otherwise disclose its *ex parte* communications about Appellant Manookian," instead scheduling an evidentiary hearing requiring the appellants to put on evidence in support of their Motion to Disqualify—evidence that, they claim, is "exclusively in the Court's possession." (*Id.* at 10.) The court quashed the Notice of Deposition, thereby allegedly depriving the appellants of the only means by which they could obtain the evidence of the judge's *ex parte* communications needed to support their Motion to Disqualify.

The appellants are wrong, of course: they possess evidence (such as it is) in the form of the judge's comments during the March 17 hearing and Phillip Young's deposition testimony—the evidence upon which their motion was premised in the first place. Moreover, because they took an appeal prior to the evidentiary hearing and before the judge ruled on their Motion to Disqualify, they have no idea how the judge might have ruled on that motion. More to the point, the appellants have not discussed the law that actually controls the issue they seek leave to appeal: the law establishing the standards for either setting or quashing the deposition of a presiding judge.

Instead, they argue that this court's guidance on the "appropriate standard for recusal and the correct process for considering disqualification requests relating to *ex parte* communications and extrajudicially developed bias will aid the parties and the Bankruptcy Court." (*Id.*) They posit that, "[i]f the Bankruptcy Court's Order is vacated and the case returned with instructions that it be transferred to another judge," that new judge "can promptly address remaining discovery and dispositive motions." (*Id.*) Again, however, the disqualification of the judge is not the question on

appeal. The Motion to Disqualify is still pending before the bankruptcy judge, albeit stayed pending resolution of this appeal of the Order Quashing Notice of Deposition. The appellants have not referenced or even alluded to the standard the judge applied in quashing the Notice setting his own deposition, much less shown that he applied the wrong standard or that a substantial ground for difference of opinion exists regarding the correctness of the decision.

Regarding the third factor, the appellants argue that denying leave for an interlocutory appeal would result in "wasted litigation and expense," as it would require them to go back before the Bankruptcy Court for an evidentiary hearing "in which Appellants lack key evidence." (*Id.* at 11.) Then, if the Bankruptcy Court denied their disqualification motion, "Appellants would seek review of the denial for the same reasons they now seek review of the Bankruptcy Court's handling of the disqualification motion." (*Id.*) The appellants, again, place the cart before the horse. Judge Walker has not yet "handled" the disqualification motion, and the appellants do not know how he would have ruled on it if they had not sought an interlocutory appeal of the Order Quashing Notice of Deposition. They have engaged in wasteful litigation and incurred unnecessary expense in seeking to appeal the Order Quashing Notice of Deposition rather than waiting to see how the judge ruled on their Motion to Disqualify and whether they actually had substantial grounds at that point for seeking to appeal that ruling.

In sum, the appellants have not made the requisite showing on even one of the three required factors. Moreover, even if the court were inclined to grant leave to pursue an interlocutory appeal, the only issue appealed is the appropriateness of the Order Quashing Notice of Deposition. That eight-page Order encompasses six pages of detailed consideration of the regulations governing requests to take the deposition of a judicial officer, set forth in Volume 20, Chapter 8

of the Guide to Judiciary Policy, promulgated by the Director of the Administrative Office of United States Courts.[7] (*See* Adv. Pro. No. 178, at 2–7.)

Generally, "[o]rders quashing a subpoena and limiting discovery are reviewed for an abuse of discretion." *In re Milholland*, No. AP 14-01589, 2017 WL 895752, at *4 (B.A.P. 10th Cir. Mar. 7, 2017) (citations omitted); *accord Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1326 (11th Cir. 2020); *In re Grand Jury Proceedings*, 744 F.3d 211, 220–21 (1st Cir. 2014); *Pointer v. DART*, 417 F.3d 819, 821 (8th Cir. 2005); *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Moreover, although authority is somewhat limited, courts considering the issue appear to have universally held that, if a presiding judge can be subpoenaed to testify at all "concerning actions taken in his judicial capacity," it is "[o]nly under extraordinary circumstances." *In re Thompson*, 77 B.R. 113, 114 (N.D. Ohio 1987); *see also Kananian v. Brayton Purcell, LLP*, No. 1:07 CV 3188, 2009 WL 10689208, at *8 (N.D. Ohio May 29, 2009) (noting that those cases finding that a subpoena to compel a judge's deposition "may proceed in extreme and extraordinary circumstances, in fact never find that such circumstances exist" (collecting cases)). The appellants have not argued that extraordinary circumstances warrant compelling Judge Walker to appear for a deposition and, further, have provided *no* basis for finding that Judge Walker abused his discretion in issuing the Order Quashing the Notice of Deposition directed to him personally.

Thus, even if the appellants had shown that an interlocutory appeal was warranted, they have not provided a basis for setting aside the Order they seek to appeal.

---

[7] Available at https://jnet.ao.dcn/policy-guidance/guide-judiciary-policy/volume-20-administrative-claims-and-litigation/ch-8-testimony-and-production-records#810.

## IV. CONCLUSION AND ORDER

The court finds that the Order the appellants seek to appeal is not a "final order" that the appellants have an automatic right to appeal. The court, therefore, construes the Notice of Appeal as incorporating a motion for leave to appeal an interlocutory order. That motion is **DENIED**, for the reasons set forth herein.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge